ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:   650.988.8500
Facsimile:    650.938.5200

ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MON CHERI BRIDALS, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CLOUDFLARE, INC., and DOES 1–500, Inclusive, <br><br> Defendants. | Case No.: 19-cv-01356-VC <br><br> **DEFENDANT CLOUDFLARE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** <br><br> Date:         June 19, 2019 <br> Time:        10:00 a.m. <br> Courtroom: 4 <br> Judge:       Hon. Vince Chhabria |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

    A. The Parties .................................................................................................................2

    B. Procedural History .....................................................................................................4

III. THE PLEADINGS..................................................................................................................4

IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF CONTRIBUTORY INFRINGEMENT AGAINST CLOUDFLARE. ................................6

    A. The Standard for Failure to State a Claim .................................................................6

    B. The Standard for Contributory Infringement.............................................................6

    C. The Plaintiffs Fail to Plead Facts Sufficient to Show Cloudflare Engaged in Contributory Infringement of Their Works. .........................................................10

        1. The Plaintiffs Fail to Allege Facts to Satisfy Either Prong of *Grokster*. ..................................................................................................10

            a. The Plaintiffs Make No Attempt to Show That Cloudflare's Service Is Incapable of Substantial Noninfringing Use. .................10

            b. The Plaintiffs Allege No Inducement Through Clear Expression or Other Affirmative Steps to Foster Infringement........................................................................................10

        2. The Plaintiffs Fail to Show Culpable Intent and Affirmative Conduct Under the *Amazon.com* Implementation of the *Grokster* Standard for Network Service Operators. ..................................................11

        3. Even Under the *Akanoc* Standard, the Plaintiffs Have Not Alleged Facts to Suggest Contributory Infringement by Cloudflare.......................14

V. CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

**CASES**                                                                                                             **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 6, 10

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 6

*Cobbler Nevada, LLC V. Gonzales*,
    901 F.3d 1142 (9th Cir. 2018) ................................................................................. 7, 8, 11

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ........................................................................................ 7, 9

*Erickson Prods., Inc. v. Kast*,
    No. 15-16801, 2019 WL 1605668 (9th Cir. Apr. 16, 2019) ............................................... 9

*Lee v. County of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .............................................................................................. 6

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir. 2011) ...................................................................................... passim

*Lu v. Stanford Univ.*,
    753 F. App'x 497 (9th Cir. 2019) ....................................................................................... 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ........................................................................................................ passim

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ..................................................................................... passim

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 14

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ........................................................................................... 14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ......................................................................................... 7, 9

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .............................................................................................. 6

*Sony Corporation of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................................................ 7

## TABLE OF AUTHORITIES
### (continued . . .)

**CASES**     **PAGE(S)**

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ......................................................................................6, 13

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ......................................................................................7, 14

**STATUTES**

17 U.S.C. § 512(a) ...........................................................................................................13

17 U.S.C. §§ 512(a) and (b) .........................................................................................5, 13

17 U.S.C. § 512(b)(2)(E) .............................................................................................1, 12

17 U.S.C. § 512(b)(2)(E)(ii) ............................................................................................13

17 U.S.C. § 512(c) .....................................................................................................1, 5, 13

17 U.S.C. § 512(c)(3)(B) .................................................................................................12

## I.     INTRODUCTION

In the amended complaint the plaintiffs again fail to allege facts sufficient to state a claim for contributory copyright infringement against Cloudflare.  The amended complaint asserts no facts plausibly showing that Cloudflare intentionally induces copyright infringement by its customers through clear expression or other affirmative steps to foster infringements.  There is no fact-based suggestion of any intentional, culpable misconduct on Cloudflare's part, which is necessary for a claim of contributory copyright infringement.

The plaintiffs' failure is not just of omission: the amended complaint affirmatively shows why dismissal of the case against Cloudflare with prejudice is appropriate.  The core defect of the plaintiffs' case is their misunderstanding of the significant difference between web *hosting services*, which Cloudflare does *not* provide, and *Internet security and website optimization* services, which Cloudflare *does* provide.  (Cloudflare explains its services more fully below.)  The plaintiffs cannot allege that their notifications of claimed infringement were adequate for Cloudflare or that Cloudflare failed to take any simple measures that were available in the face of their communications.  Exhibit C to the amended complaint (Dkt. 28-3), which the plaintiffs describe as a "sample" of "takedown notices" they sent to Cloudflare, lays bare the plaintiffs' error.  *See* Amended Complaint (Dkt. 28) at ¶ 34.  The notice does not refer to Cloudflare.  It simply identifies an (allegedly) "infringing domain," speaks "To Whom it May Concern," and then discusses "a website that your company hosts."  *See* Exhibit C to the amended complaint (Dkt. 28-3).  The exhibit also expressly references section 512(c) of the Digital Millennium Copyright Act (DMCA), a provision that relates to web hosting services and not to Cloudflare's services.  *See* 17 U.S.C. § 512(c).  It thus fails to contain additional information that is necessary for notifications of claimed infringement to services like Cloudflare under 17 U.S.C. § 512(b)(2)(E).  The amended complaint repeatedly makes clear that Cloudflare provides services *to websites, which use other hosting services*.  *See* Amended Complaint (Dkt. 28) at ¶¶ 1, 6, 25, 26, 43.  Cloudflare does not itself host its customers' websites.[1]  The plaintiffs'

---

[1] On one occasion, the plaintiffs refer to Cloudflare as "continuing to host and transmit content,"

misunderstanding of the critical distinction between the types of services cannot justify leave to amend. Cloudflare previously identified these defects in its motion to dismiss the original complaint. Since the plaintiffs failed to cure the defects in their amended complaint, they cannot do so and any amendment would be futile.

## II.     BACKGROUND

### A.     The Parties[2]

Cloudflare provides Internet security and traffic optimization services, on both a free and a paid basis, to a wide variety of website operators, including banks, universities, entertainment companies, e-commerce companies, governments, and political campaigns. Cloudflare's customers include the FBI, the Library of Congress and the United States Copyright Office; NASDAQ and Cisco; and dissident websites that challenge authoritarian regimes. Cloudflare protects over 13 million web properties and 2.8 billion users ever month, handling approximately 10 percent of global Internet requests.

To provide its security and website optimization services, Cloudflare operates a pass-through (or "conduit") network that sits between the origin or "host" server of a website and the Internet users wanting to access that website. Cloudflare's automated processes analyze traffic and check for harmful transmissions, such as distributed denial of service (DDoS) attacks, bots, and other malware such as viruses or worms that may incapacitate networks, harm computers, or steal data or information. If Cloudflare detects a threat in the traffic, it blocks the traffic before it can reach its destination and cause damage. If Cloudflare does not detect a threat, it will relay traffic onwards to the website and back to the website's user, thereby acting as a "conduit" that sits between the Internet user and the website host, not acting as the host itself.

To promote Internet network efficiency, Cloudflare also engages in "system caching": on

---

*see* Amended Complaint at ¶ 40, but in the overall context of the repeated distinction between Cloudflare and companies that host its customers' websites, the amended complaint does not plausibly allege that Cloudflare itself provides hosting services.
[2] Cloudflare does not rely upon facts outside the complaint in this motion but provides this factual background to orient the Court to the context.

occasion, for web pages and other resources that draw frequent requests, Cloudflare will maintain some materials from a customer's host for a short period of time in a "cache." That may shorten the distance between the user and the material and reduce transmission burdens to improve network performance. The process can result in a split-second improvement in time for a web page to load. When web content changes on a website's hosting service, Cloudflare's cache changes as well to sync with the host; the website owner and its hosting service are exclusively in control of the content. Cloudflare also provides a domain name look-up service (DNS) that allows computers to match domain names to IP addresses to locate, and direct traffic to, resources across the Internet. To support these services, Cloudflare operates one of the largest content delivery networks (CDNs) on the Internet. Its technology routes Internet traffic through more than 155 data centers around the world.

Cloudflare neither operates its customers' websites nor hosts them. Cloudflare, unlike its customers and their hosting services, has no control over the material its customers put on their websites or over the websites' presence on the Internet. To use Cloudflare, a customer must already have an existing website with its own Internet hosting and transmission facilities or services. The customer must also have its own domain registrar.

While Cloudflare's services protect websites and optimize network performance and traffic, they are not essential to a website's operation. Termination of Cloudflare's service for a website does not change what materials appear on the site or whether the site remains accessible over the Internet from the host server. Instead, termination would remove Cloudflare's protection of the site against security threats and would allow users to access the website directly from the hosting provider. That could make the website, persons seeking it, and other persons or sites interacting with any of them vulnerable to cyberattacks.

The plaintiffs, Mon Cheri Bridals and Maggie Sottero Designs, are two wedding dress retailers and wholesalers who complain about counterfeits and knockoffs on the Internet. Dkt. 28, Amended Complaint, ¶ 9. The plaintiffs advertise their dresses using marketing images of their dress designs. *Id.* ¶ 10. Together with their industry group, the American Bridal & Prom

Association, Inc., the plaintiffs claim to have successfully brought several lawsuits against websites that market "knockoff" versions of their dresses. *Id.* ¶ 20. Now, they sue Cloudflare for contributory copyright infringement, for Cloudflare's failure to terminate service to Does 1–500, third-party web sites that the plaintiffs accuse of violating their rights. But the complaint alleges no active misconduct by Cloudflare.

### B.     Procedural History

The plaintiffs sued Does 1–10 and Cloudflare on November 2, 2018, in the Central District of California. Dkt. 1. Cloudflare moved to dismiss the action and moved to transfer the case to this district. Dkt. 23, 24. In response to the motion, the plaintiffs amended their complaint on February 6, 2019, adding a claim of direct infringement against Does 1–500 and making inconsequential changes to the contributory copyright infringement claim against Cloudflare. Dkt. 28. The Central District denied the motion to dismiss the original complaint as moot because of the amended complaint; it stayed Cloudflare's obligation to respond to the amended complaint pending the hearing on the motion to dismiss. Dkt 29. The Central District granted Cloudflare's motion to transfer the case and transferred it to this district. Dkt. 33. Cloudflare now moves to dismiss the amended complaint.

### III.    THE PLEADINGS

The plaintiffs bring claims of direct and contributory copyright infringement regarding an "internet counterfeiting effort originating primarily in China." Dkt. 28 ¶¶ 1, 14. The plaintiffs allege that various websites make unauthorized use of their copyrighted marketing photos to sell knockoff dresses. Dkt. 28 ¶¶ 10, 31, 43.

While the principal dispute appears to be with the so-called counterfeit websites, the plaintiffs have sued Cloudflare on a single claim of contributory copyright infringement. Dkt. 28 ¶¶ 50–54. The amended complaint does not allege that Cloudflare directly infringed any copyrighted works or that Cloudflare hosts any allegedly infringing materials.

The plaintiffs do not allege (and cannot allege) that Cloudflare's service is devoted to servicing infringers and is incapable of substantial noninfringing uses. Notably, plaintiff Maggie

Sottero Designs, LLC is a customer of Cloudflare and has been one since 2015.  Nor do the plaintiffs allege any affirmative conduct on the part of Cloudflare to encourage infringement.

Instead, the plaintiffs base their claim on Cloudflare's alleged failure to take the "simple measure" of halting its service to customers upon receipt of the plaintiffs' defective notifications of claimed infringement.[3]  *See id.* ¶¶ 34, 38–41.  The amended complaint alleges that Cloudflare's "liability arises from its material contribution to the infringement of the infringing third party websites its provides services for by, *inter alia*, making it easier and faster for internet users to access infringing websites and content as well as knowingly making infringing content stored on its data center servers available and accessible to the consuming public after receiving credible notices of actual infringement from the copyright owners." *Id.* ¶ 1.  According to the plaintiffs, the absence of Cloudflare's security and web-optimization services makes a website "less desirable," and the services "significantly magnif[y]" the effects of whatever the hosts and websites post.  *Id.* ¶¶ 41–42.  The plaintiffs provide these mere general conclusions and characterizations of how Cloudflare's services contribute to infringements, but the plaintiffs provide no specific relevant facts to undergird those characterizations.  The plaintiffs fail to assert facts to show plausibly that Cloudflare's protection against cyberattacks induces copyright infringement.  In referring to Cloudflare's making access to material "easier and faster" they also fail to disclose the actual split-second timing difference that Cloudflare provides, which cannot plausibly induce infringements.  Their vague characterization "faster and easier," without a specific time allegation, leaves the effect of speed to a reader's imagination, and the plaintiffs have failed to allege specific *facts* to support the claim.  In any event, nothing that the plaintiffs do or can say would plausibly suggest that Cloudflare has engaged in contributory infringement

---

[3] The plaintiffs attach a "sample" of the communications they claim they sent to Cloudflare through a company called Counterfeit Technology.  *See* Dkt. 28-3, Exhibit C.  But Exhibit C contains no indication that it ever went to Cloudflare.  Exhibit C asserts that the recipient hosts the website anagowns.com, but Cloudflare does not provide hosting services and the complaint does not allege that Cloudflare does so.  Furthermore, the notification referred to 17 U.S.C. § 512(c), which applies to hosting services and not Cloudflare.  Cloudflare's services fall under 17 U.S.C. §§ 512(a) and (b), not (c).  *See* pages 12–13 below.

under the landmark cases of the Supreme Court and the Ninth Circuit.

## IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF CONTRIBUTORY INFRINGEMENT AGAINST CLOUDFLARE.

The plaintiffs have incurably failed to, and cannot, allege facts necessary to sustain a claim of contributory copyright infringement against Cloudflare.

### A. The Standard for Failure to State a Claim

A plaintiff fails to state a claim "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Courts apply the plausibility standards of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint cannot survive a motion to dismiss unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Here, the plaintiffs fail to state a plausible claim of contributory infringement.

While a court must take all allegations of fact as true in the light most favorable to the non-moving party, the full complaint must support those allegations. *See Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A plaintiff may trigger dismissal of its claim by contradicting its allegations in the complaint with information in the exhibits. *See Sprewell*, 266 F.3d at 988. A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Lu v. Stanford Univ.*, 753 F. App'x 497 (9th Cir. 2019) (quoting *Sprewell*, 266 F.3d at 988).

### B. The Standard for Contributory Infringement

In *Grokster* the U.S. Supreme Court set the standard for contributory copyright infringement liability: "[o]ne infringes contributorily by intentionally inducing or encouraging

direct infringement . . . ." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Within that general standard, the Court identified two categories of liability, which Justice Ginsburg summarized as follows: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."[4] *Id.* at 942 (Ginsburg, J., concurring). Thus, to state a contributory infringement claim, a plaintiff must show that the defendant either (1) provides a product or service incapable of substantial noninfringing uses or (2) intentionally and actively induces infringement "by clear expression or other affirmative steps taken to foster infringement." *Id.* at 936–37.

The Ninth Circuit's recent *Cobbler Nevada* decision addressed the teaching of *Grokster*, clarifying that, under any strand of the contributory infringement doctrine, wrongful intent is necessary. *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147 (9th Cir. 2018). This reinforces the reasoning of a string of Ninth Circuit cases on contributory copyright liability after *Grokster*. The "well-settled rule" of *Grokster* is that "one infringes contributorily by intentionally inducing or encouraging direct infringement." *Cobbler Nevada*, 901 F.3d at 1147 (quoting *Grokster*, 545 U.S. at 930, and *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007)) (alteration omitted). "[P]roper proof of the defendant's intent that its product or service be used to infringe copyrights is paramount." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1038 (9th Cir. 2013); *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745–46 (9th Cir. 2019) (holding that Zillow was not liable because it lacked requisite intent to foster infringement); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007) (requiring specific intent to foster infringement to be liable for contributory infringement).

To plead the requisite intent, a plaintiff must allege facts showing that a defendant has

---

[4] *Grokster* built upon the Supreme Court's previous decision on contributory infringement, *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). *Sony* holds that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement" if the product is "capable of substantial noninfringing uses." *Id.* at 442.

taken affirmative steps to foster infringement. Exemplifying this requirement, in *Cobbler Nevada* the court of appeals held that a plaintiff failed to state a claim against a foster care home for contributory infringement by alleging the mere failure to secure its Internet connection, in other words for the failure to act. 901 F.3d at 1145. The court of appeals ruled that, "without allegations of intentional encouragement or inducement of infringement, [a defendant's] failure to take affirmative steps" to police infringement is "insufficient to state a claim" for contributory infringement. *Id.*; *see also Grokster*, 545 U.S. at 939 & n.12 (no liability "merely based on a failure to take affirmative steps to prevent infringement"). In short, alleged inaction does not create contributory infringement liability. A plaintiff must plead much more.

Consistently with Justice Ginsburg's concurrence in *Grokster*, the Ninth Circuit also discussed the "two strands of liability following *Sony* and *Grokster*." *Cobbler Nevada*, 901 F.3d at 1147. One is "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses"; the other is "actively encouraging (or inducing) infringement through specific acts." *Id.* (quoting *Amazon.com*, 508 F.3d at 1170, and *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). The plaintiffs' complaint fails to plead a viable claim in either strand of the doctrine.

*Amazon.com* articulated the Ninth Circuit's implementation of the *Grokster* standard in the online services context. 508 F.3d at 1170. To establish culpable intent and affirmative misconduct under *Amazon.com*, a plaintiff must establish three elements: (1) a defendant's substantial assistance to infringement; (2) the defendant's *actual* knowledge of *specific* infringements; and (3) the defendant's failure to take simple measures to prevent further harm to copyrighted works. *Id.* at 1172. Only when all three elements are present may a court infer the requisite intent to induce infringement. *Id.* The court of appeals stressed that the "actual knowledge" standard was consistent with *Grokster*'s intent requirement, which remained the touchstone. *Id.*

One Ninth Circuit case, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions., Inc.*, set forth a standard for contributory infringement that is out of line with the rest of Ninth Circuit

jurisprudence.  658 F.3d 936, 943–44 (9th Cir. 2011).  The *Akanoc* panel (including Judge Kozinski) held that a web hosting service could be liable for contributory infringement if it provided an "essential step" to support infringement, *id.,* a rule that Judge Kozinski had proposed in his forceful *dissent* in *Perfect 10, Inc. v. Visa*, where he urged that payment processors for infringing websites could be liable as "but-for" causes of infringements.  *Akanoc,* 658 F.3d*.* at 944 (citing 494 F.3d at 812).  The majority in *Perfect 10 v. Visa* explicitly rejected Judge Kozinski's approach.  *Visa,* 494 F.3d at 797 n.6; 494 F.3d at 800 n.11 (twice rejecting "essential step" basis of infringement).  The *Visa* majority raised concerns that "the dissent's proposed expansion of existing secondary liability law" would reach any provider in the causation chain. 494 F.3d at 798 n.9.

The Ninth Circuit again rejected "but-for" causation as a basis for contributory infringement liability in *Fung*.  The court of appeals stated: "in a 'but-for' sense . . . Sony *caused* whatever infringement resulted from the use of Betamax sets," but Sony was not liable because "it was not at fault, with fault measured by Sony's intent."  *Fung*, 710 F.3d at 1038.

The *Akanoc* decision departed from established Ninth Circuit jurisprudence and has become a relative backwater in the law, occasionally sowing confusion.  The Ninth Circuit's most recent contributory infringement decision recognized the "apparent tension" between *Akanoc* and prevailing circuit law on contributory infringement.  *See Erickson Prods., Inc. v. Kast*, No. 15-16801, 2019 WL 1605668, at *7 (9th Cir. Apr. 16, 2019).  Because of the "tension" and confusion, the court of appeals held that there was no "plain error" in a jury instruction where a district court had muddled the standard of contributory infringement.  *Id.*  Cloudflare anticipates that the plaintiffs will attempt to capitalize on the same confusion and rely primarily on *Akanoc* in their briefing.

The "but-for" causation standard of *Akanoc* is wrong: contributory infringement requires wrongful intent, as *Grokster* and all other Ninth Circuit jurisprudence establishes.  *See Erickson*, 2019 WL 1605668, at *7.  Without an *en banc* decision, *Akanoc* could not override the Ninth Circuit's other precedents, and the Court should disregard it.  Nevertheless, in an abundance of

caution, Cloudflare will address the *Akanoc* standard because, even under it, the plaintiffs cannot state a claim against Cloudflare.

### C. The Plaintiffs Fail to Plead Facts Sufficient to Show Cloudflare Engaged in Contributory Infringement of Their Works.

#### 1. The Plaintiffs Fail to Allege Facts to Satisfy Either Prong of *Grokster*.

##### a. The Plaintiffs Make No Attempt to Show That Cloudflare's Service Is Incapable of Substantial Noninfringing Use.

The plaintiffs do not allege that Cloudflare's services are incapable of substantial noninfringing uses. To the contrary, the plaintiffs concede that Cloudflare's services have substantial and commercially significant uses, including content delivery network services, web content optimization services, website security services, DDoS protection services, and managed domain name system (DNS) network services. *See, e.g.*, Dkt. 28 ¶ 22. The amended complaint contains no allegation that Cloudflare specially adapts its services for infringement. Cloudflare's services work the same way for any website that uses them, whether those sites contain allegedly infringing materials or not. Because the complaint fails to allege that Cloudflare's services are incapable of substantial noninfringing use, the plaintiffs do not state a contributory infringement claim under this strand of the contributory infringement standard. Moreover, they cannot do so because Plaintiff Maggie Sottero Designs has itself been a Cloudflare customer since 2015.

##### b. The Plaintiffs Allege No Inducement Through Clear Expression or Other Affirmative Steps to Foster Infringement.

The amended complaint also omits any factual allegations necessary to show that Cloudflare actively induces infringement by clear expression or other affirmative steps to foster infringement. *Compare Grokster*, 545 U.S. at 936–37, *with* Amended Complaint, Dkt. 28. Mere threadbare recitals and conclusory statements, like those of the plaintiffs here, are insufficient to state a cause of action. *Iqbal,* 556 U.S. at 678. Apart from empty conclusions, the plaintiffs' theory of liability wrongly rests on Cloudflare's alleged *inaction.* The plaintiffs assert that Cloudflare "ignored these notices and takes no action" after receiving their manifestly improper[5]

---

[5] Cloudflare will discuss below, at 12–13, why the plaintiffs' notifications of claimed

notifications of claimed infringement.  Dkt. 28 ¶ 35.  That does not state a claim for contributory infringement.  Only "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  *Cobbler Nevada*, 901 F.3d at 1148 (quoting *Grokster*, 545 U.S. at 919).  "[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses."  *Cobbler Nevada*, 901 F.3d at 1148 (quoting *Grokster*, 545 U.S. at 939 n.12).  In light of the Ninth Circuit's survey of contributory infringement jurisprudence in *Cobbler* Nevada, the plaintiffs' failure to allege any active culpable conduct by Cloudflare is fatal to their claim of contributory infringement.

### 2. The Plaintiffs Fail to Show Culpable Intent and Affirmative Conduct Under the *Amazon.com* Implementation of the *Grokster* Standard for Network Service Operators.

Under the *Amazon.com* standard, to show the culpable intent and affirmative conduct that *Grokster* requires, plaintiffs must show (1) a defendant's substantial assistance to infringement, (2) actual knowledge of specific infringements, and (3) a failure to take simple measures to prevent further harm to copyrighted works.  508 F.3d at 1172.

The plaintiffs have not alleged, and cannot show, facts demonstrating Cloudflare's substantial assistance to infringements.  Instead, they offer vague characterizations, without any specific relevant facts, to argue that Cloudflare's services substantially assist infringers by making websites load "much faster."  *See* Dkt. 28 ¶¶ 38, 41.  The complaint discusses only relative speed, noting that sites using Cloudflare load twice as fast as those that don't, but they artfully omit any reference to the actual speed difference.  *Id.*  The difference is a matter of hundredths of a second, which is why the plaintiffs have avoided specificity; they cannot plausibly allege that difference substantially assists infringers.  The plaintiffs fail to satisfy the

---

infringement were inadequate for a service provider like Cloudflare.

first element under *Amazon.com*.

The plaintiffs also have not alleged, and cannot show, facts demonstrating Cloudflare's *actual knowledge* of *specific* infringements together with a failure to take simple measures to prevent further harm to the plaintiffs' copyrighted works. Pointing to Exhibit C to the Complaint as a sample, the plaintiffs claim that the notifications of claimed infringement they sent to Cloudflare triggered actual knowledge. *Id.* ¶ 41; *see also* Dkt. 28-3. Notifications of claimed infringement are, at best, notifications of *claims*, which may or may not be true; without some court finding or other authoritative determination, they do not convey actual knowledge of *infringement*. This is a very serious issue in the network security context, where bad actors may use many different tools, including bogus copyright allegations, to deprive websites of protection and then to attack them.[6] Plaintiffs characterize their notifications as "credible" without stating any facts that demonstrate their credibility. *See* Dkt. 28 at ¶ 1. In any event, defective notifications, like those the plaintiffs sent to Cloudflare, cannot support any claim of actual knowledge. 17 U.S.C. § 512(c)(3)(B).

The notices are deficient in several ways. First, the notifications are not adequate for Cloudflare's transmission conduit and system caching services. Cloudflare does not offer *hosting* services, and the plaintiffs cannot allege that it does. The sample communication the plaintiffs attach as Exhibit C does not contain any reference to Cloudflare at all; the language suggests that the plaintiffs' agent directed the communication to a *hosting* service: "please be advised that this message serves as the 4th formal notice under the DMCA *that a website that your company hosts* . . . is illegally duplicating and reproducing at least one copyrighted work . .

---

[6] Notifications to services like Cloudflare may have much more serious consequences than notifications to companies that host user-generated content. Removing user-generated material does not affect the security of the user (and of the Internet more generally). Depriving websites of cybersecurity protection, however, makes both the sites and the broader Internet ecosystem vulnerable to malicious conduct like distributed denial-of-service attacks. It is therefore unreasonable to infer that a cybersecurity provider has actual knowledge of infringements based upon unsubstantiated claims of infringement. Notably in the system caching service context (like that of Cloudflare), to be valid a notification of claimed infringement must assert *either* that the offending material has already come down from the source site or that *a court has ordered* the offending material to be removed. 17 U.S.C. § 512(b)(2)(E). Those additional requirements guard against abuse.

. . ." Dkt. 28-3 (emphasis added).  Second, the plaintiffs did not provide actionable information to Cloudflare that would curb the alleged infringements.  Cloudflare's pass-through, "conduit" services merely transmit material, and the plaintiffs cannot allege that Cloudflare has any ability to detect particular copyrighted material passing over its system (as opposed to telltale indicators of denial-of-service attacks or malware like viruses or worms).  Because Cloudflare's system caching services at most mirror material made available by the host server (and then only in certain circumstances), removing material *at the source* will automatically remove that material from Cloudflare servers.  But removal *from Cloudflare's service* would not affect the availability of the material from the source.

Third, the communication in Exhibit C identifies itself explicitly as a notification "under Section 512(c) . . . ."  But Cloudflare provides pass-through transmission (conduit) and system caching services that correspond to sections 512(a) and (b) of the Copyright Act.  It does not provide hosting services that correspond to section 512(c) of the Act.  Notifications of claimed infringement under section 512(b) require essential additional information beyond the section 512(c) requirements, and Exhibit C lacks the additional information.  *See* 17 U.S.C. § 512(b)(2)(E)(ii) (requiring statement that the source website of the cached material has removed or disabled access to it at the source or that a court has ordered it to do so).  The law does not have a provision on notifications for pass-through providers.  *See* 17 U.S.C. § 512(a).  *The information in Exhibit C is thus irrelevant to Cloudflare's services.*[7]  Because Cloudflare addressed the flaws of that exhibit on the motion to dismiss the original complaint, by repeating their reliance on that exhibit the plaintiffs concede they cannot overcome the fatal problem with both their notifications and their claim.  *See Sprewell*, 266 F.3d at 988.  For these reasons, the amended complaint fails to, and cannot, allege facts to satisfy the second element of the *Amazon.com* test.

Nor does the amended complaint identify any "simple measures" that Cloudflare can take

---

[7] To assist copyright owners, Cloudflare passes notifications of claimed infringements under section 512(c) to both its customers and their hosting providers, but that type of notice cannot affect Cloudflare's operation of its own service.

regarding material passing over its system to prevent further harm to copyrighted works. The only "simple measures" the plaintiffs propose is "revocation and termination of its services to infringing clients." Dkt. 28 ¶ 41. But the ability to terminate user's access to a system implicates vicarious liability, not contributory infringement. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019). (The plaintiffs make no claim of vicarious liability.[8]) Furthermore, actions that must depend upon deficient notifications like those of the plaintiffs are not "simple measures." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017).[9]

In any event, the simple measure that the plaintiffs propose, namely the withdrawal of Cloudflare's services to the allegedly infringing websites, would not prevent further harm to the plaintiffs' copyrighted works. Any infringing material would remain on the same websites and will continue to be available to the public, just without Cloudflare's protection against malicious attacks and without Cloudflare's system caching to optimize Internet traffic to and from the websites. For each of these reasons, the complaint fails to allege facts to satisfy the third element of *Amazon.com*. Thus the complaint alleges no facts to show Cloudflare's culpable intent to foster infringement under the *Amazon.com* implementation of the *Grokster* standard.

### 3. Even Under the *Akanoc* Standard, the Plaintiffs Have Not Alleged Facts to Suggest Contributory Infringement by Cloudflare.

While *Akanoc* is not good law, as Cloudflare explained above at 8–9, the plaintiffs have failed to allege facts to meet its standard. The plaintiffs cannot allege or show that Cloudflare's services are an "essential step" or "but-for" cause of infringement. *Akanoc*, 658 F.3d at 943–44.

---

[8] In any event the plaintiffs cannot allege that Cloudflare has a direct financial interest in infringements of the plaintiffs' works or that Cloudflare has a practical ability to halt infringements by websites that it doesn't host, both of which are essential elements of a vicarious liability claim.

[9] The plaintiffs' allegations of failure to enforce a repeat infringer termination policy are irrelevant. *See* Dkt. 28 ¶ 45. First, a repeat infringer termination policy is a mere condition for a safe harbor and has no bearing on the substantive claim. Second, reasonable implementation of a repeat infringer policy requires valid notifications. "We hold that a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with *DMCA-compliant notifications*, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (emphasis added). Exhibit C to the amended complaint is an *invalid* notification for a service provider like Cloudflare, as Cloudflare has explained above.

The plaintiffs do not allege that Cloudflare's cessation of service would prevent further infringements of the plaintiffs' copyrighted works. Dkt. 28 ¶ 41. Instead, they claim that Cloudflare's services help protect websites against cyberattacks and help websites load marginally faster. *Id.* This is insufficient to support a claim of contributory infringement even under *Akanoc*.

Thus, the plaintiffs fail to allege facts that Cloudflare specially adapted its service to infringements; that Cloudflare actively induced infringements by its customers by clear expression or affirmative steps to foster infringement; that Cloudflare evidenced culpable intent by having actual knowledge of specific infringements yet failing to take simple measures to prevent further harm to the plaintiffs' copyrighted materials; or that Cloudflare's services are essential to the infringements of Cloudflare's customers. All these failures are fatal to the plaintiffs' claim of contributory infringement, and the Court should dismiss the case against Cloudflare with prejudice.

## V.   CONCLUSION

Because the plaintiffs have incurably failed to allege facts to support any formulation of contributory infringement liability, the Court should grant Cloudflare's motion and dismiss the claim against Cloudflare with prejudice.

Dated: April 25, 2019                    FENWICK & WEST LLP

By: */s/ Andrew P. Bridges*
      Andrew P. Bridges

Attorneys for Defendant
CLOUDFLARE, INC.