ROBERT B. OWENS (CSB No. 77671)
rowens@ogrlaw.com
OWENS & GACH RAY
10323 Santa Monica Blvd., Ste. 102
Los Angeles, CA  90025
Telephone:      310.553.6611
Facsimile:      310.553.2178

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MON CHERI BRIDALS, LLC, *et al.,* | Case No.: 19-cv-01356-VC |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | |
| CLOUDFLARE, INC., | Amended Complaint Served:  Feb, 6, 2019 |
| Defendant. | Current Response Date:  (Date not set) Current Date for Opposition: May 16, 2019 Proposed Date for Opposition: May 17, 2019 Current CMC Date: July 9, 2019 |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement…........................................................................  1

Pertinent Factual Allegations………....................................................  3

Legal Argument………..........................................................  4

I.  Motion to Dismiss Standard………...........................................  4

II.  Plaintiffs Have Adequately Pled A Claim For Contributory Infringement

Based Upon Material Contribution Allegations…………………………  5

  A.  Contributory Copyright Infringement…………………………………  5

  B.  Plaintiffs Have Adequately Pled Copyright Infringement Through

    *Material Contribution*……………………………………………  10

    (i)   Knowledge…………………………………………………..  13

    (ii)  Substantial Assistance………………………………………….  18

    (iii) Ability to Take Simple Steps to Avoid Further Damage……………  20

    (iv) Continued Access…………………………………………  21

Conclusion……………………………………………………………...........  22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001)………….                *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………...                   4-5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)………………………………                         4

*BMG v. Cox Communications*, 881 F.3d 293 (4th Cir. 2018)…………………...                             15

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)……………...                    5

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018)……………...                        9,22

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013)………              6,7

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999)…………………...                  4

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)………………………….               5,14,17,18

*Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)…………….             10

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)…………             5

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)…………………………………….               5

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,

   658 F.3d 936, 943 (9th Cir. 2011)………………………………..………………….              7,18

*MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005)……………………                   *passim*

*Miller v. Facebook, Inc.*, No. C 10-00264, 2010 U.S. Dist. LEXIS 61711,

   *21-22 (N.D. Cal. May 28, 2010)……………………………………………                           15,17

*Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)………………               *passim*

*Perfect 10, Inc. v. Giganews*, Inc., 847 F.3d 657, 671 (9th Cir. 2017)…………..                     6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)…………            *passim*

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,

   907 F. Supp. 1361, 1375 (9th Cir. 1995)…………………………………….            6,11,18,19,22

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)……….            10

*UMG Recordings, Inc. v. Grande*, 12-cv-00365-DAE-AWA,

   slip op. at 40 n. 6 (W.D. Tex. Mar. 15, 2019)………………………………..                     10

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS                                                     Case No.: 19-CV-01356-VC

ii

**Cases (cont'd)**                                                      **Page**

*Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F.Supp.2d 110, 115 (S.D.N.Y. 2013)………      14


**Statutes**                                                           **Page**

Federal Rules of Civil Procedure 8(a)(2)……...…………………………………      4

Federal Rule of Civil Procedure 12(b)(6)……...…………………………………..      4

Federal Rule of Civil Procedure 15(a)…………………………………………      5

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS                                                      Case No.: 19-CV-01356-VC

iii

## PRELIMINARY STATEMENT

This case is a contributory copyright infringement claim brought by two dress manufacturers against Cloudflare, Inc. ("Cloudflare") arising out of Cloudflare's material contribution to the infringing activities of its customers who use its internet service platforms. Cloudflare copies and distributes copies of Plaintiffs' copyrighted works with actual knowledge that they are infringing.  In every sense, therefore, Cloudflare literally assists in the infringement, and that is precisely what Plaintiffs allege in their First Amended Complaint.  While Cloudflare attempts to distance itself from the infringing websites it supports on its platform, Cloudflare's own literature and explanation of services illustrates that web users who visit a Cloudflare client's infringing website are actually visiting a mirror image of the website hosted and stored on one of Cloudflare's many data center servers.

Therefore, infringing content is physically and tangibly copied, stored and located on Cloudflare's data servers, which serve as a type of proxy for the infringing website, even though the original content is simultaneously maintained and stored by the infringing website's host server of choice.  Cloudflare supports, encourages, and materially contributes to the infringing activities of its clients by allowing internet browsers to access the infringing content *faster* and more *efficiently* than if the infringers were not afforded Cloudflare's platform and services. Cloudflare facilitates quicker and safer access to infringing content by allowing internet users to view, access, and load infringing images and content *directly* from the closest Cloudflare data center rather from the client website's distant primary server and host.

Cloudflare now moves to dismiss Plaintiffs' First Amended Complaint ("FAC"), arguing that Plaintiffs have failed to allege sufficient facts to maintain their claims for copyright infringement.  Cloudflare suggests that it can never be held liable for copyright infringement

1

because it merely provides "Internet security and website optimization services" rather than "web hosting services."  In a clever sleight of hand, Cloudflare tries to sidestep the fact that it stores client website content, including infringing content, on its data servers in order to provide internet users with quicker, safer access to the infringing content.  Ignoring the settled law which distinguishes between the "inducement" and "material contribution" pillars of contribution liability, Cloudflare conflates these two pillars in arguing that Plaintiffs' claims, which are based only on the *material contribution* theory of contributory copyright infringement, do not satisfy the more demanding standard used to evaluate the *inducement* theory for contributory infringement.  Cloudflare's entire motion is therefore a strawman.

While Cloudflare is not a hosting provider *per se* it does host infringing content on its servers in order to provide optimization and protection services to clients.  While Cloudflare does not create or control the content on its clients' websites, it nevertheless substantially and materially assists the infringers by making it easier for users to access those websites on the web. Confronted with notice – as it was repeatedly in this instance -- of infringing content on its clients' websites, and by extension on Cloudflare's servers, Cloudflare is able to take simple measures to prevent further damage to Plaintiffs' copyrighted works by removing the content from its servers, making it more difficult for users to access and load infringing content.  It simply chooses not to do so.  Instead, Cloudflare conceals the identity of the infringing websites' host servers from copyright owners thereby preventing copyright holders from seeking recourse against the infringing sites and their hosts.

Plaintiffs' factual allegations are sufficient to establish a claim for contributory infringement because they have alleged that Cloudflare has actual knowledge of specific infringing material available on its system, and could, but does not, take simple measures to

2

prevent further damage to copyrighted works, choosing instead to continue providing "optimized" access to the infringing works all the while shielding infringers from prosecution.

## PERTINENT FACTUAL ALLEGATIONS

Plaintiffs are wedding and social occasion dress manufacturers with established brands and dress designs. *See* First Amended Complaint filed February 6, 2019 (the "FAC") at ¶ 9. Plaintiffs invest substantial resources in developing professional photographs that capture the specific "look" and "feel" of Plaintiffs' dresses. *Id*. at ¶¶ 10-11. Plaintiffs' copyrighted photographs are the product of extensive creative efforts, including the selection of models and props, staging, lighting, positioning, and editing. The photographs are then used by Plaintiffs to market and advertise their particular collections. *Id*.

Unfortunately, the online retail market is rampant with counterfeiters who lure dress seekers into purchasing knockoffs at low, "unbeatable" prices through the unauthorized use of Plaintiffs' copyrighted images. *Id*. at ¶ 12. The dresses shown in the pictures are authentic, but the dresses received by the unwary consumers are nothing short of cheap imitations. *Id*. at ¶ 13. This harms the consumer who was looking for an authentic product as well as the manufacturers like Plaintiffs who lose sales and must deal with consumer complaints about the quality of the dresses they received.

Counterfeiters all over the world are able to infringe on Plaintiffs' copyrights and take advantage of American online consumers with the help of services offered by various internet service providers such as Cloudflare. With Cloudflare, infringers around the globe are able to bring infringing content to online users faster and more safely than without it. *Id*. at ¶¶ 25-26. Cloudflare gives counterfeit sites the ability to reach consumers quickly and efficiently by caching "mirror copies" of the websites on its servers and then using its Anycast technology to

3

route visitors to Cloudflare's nearest data centers rather than the website's host provider. *Ibid*. Thus, the infringing images seen by visitors are loaded from and physically stored on Cloudflare's data center servers. *Id*. at ¶ 38.

After being notified of infringing content used by Cloudflare's website clients and stored on Cloudflare's data servers, Cloudflare takes no remedial action, continues to provide its optimization services to repeat infringing clients, and for good measure conceals the identities of the infringing websites' host servers. *Id*. at ¶¶ 26, 31-36. Even though Cloudflare can take simple measures to avoid further damage to complaining copyright holders by, *inter alia*, removing the website and the infringing content from its servers, terminating optimization services to infringing website clients, and revealing the identity of the infringing website's host, Cloudflare continues to provide services to infringing clients, giving internet users faster, safer, and performance enhanced access to infringing content. *Id*. at ¶¶ 36-45. In this way, Cloudflare materially contributes to and supports the infringing activities of its clients. *Id*. at ¶¶ 42-45.

## LEGAL ARGUMENT

### I.     MOTION TO DISMISS STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ*., 526 U.S. 629, 633 (1999).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## II.  PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED UPON MATERIAL CONTRIBUTION ALLEGATIONS

### A.  Contributory Copyright Infringement

Settled law holds that a party who "induces, causes or materially contributes to the infringing conduct of another," and who has knowledge of the infringing conduct, may be held liable for contributory infringement.  *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019 (9th Cir. 2001) ("*Napster*"); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("*Ellison*") (a defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) "induces, causes, or materially contributes to the infringing conduct").  In *Grokster*, the Supreme Court

identified two variations on contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts . . . or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' non-infringing uses." *MGM Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 942 (2005) ("*Grokster*") (Ginsburg, J., concurring).

The Ninth Circuit has further articulated the basic test.  A defendant is liable for contributory infringement if it either (1) materially contributes to the infringement, or (2) induces the infringement. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("*Visa*"). Contributory copyright infringement requires (1) knowledge of another's infringement and (2) *either* (a) material contribution to the infringement *or* (b) inducement of the infringement.  *Id.*

Under a "material contribution" theory, in the internet context, a plaintiff can establish liability if it shows "that a computer system operator . . . 'has actual knowledge that specific infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("*Amazon*") (quoting *Napster*, 239 F.3d at 1022; *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (9th Cir. 1995) ("*Netcom*")); *see also Perfect 10, Inc. v. Giganews*, Inc., 847 F.3d 657, 671 (9th Cir. 2017) ("*Giganews*").

The alternative "inducement" theory for the second element of contributory liability has four prongs: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) ("*Fung*").  While Cloudflare contends that Plaintiffs have not satisfied the "inducement" theory of contributory liability, **Plaintiffs have not attempted to do so**, opting instead to

6

proceed on a "material contribution" theory of contributory liability, which the Ninth Circuit has repeatedly held is an acceptable alternative. *See Fung*, 710 F.3d at 1029 n.11; *Amazon*, 508 F.3d at 1171; *Visa*, 494 F.3d at 795-96.

Although the "material contribution" and "inducement" tests vary in a number of ways, they both reflect the Supreme Court's holding in *Grokster* that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930.  Under either theory, "*Grokster* tells us that contribution to infringement must be intentional for liability to arise." *Amazon*, 508 F.3d at 1170.  Even though proper proof of the defendant's intent that its product or service is used to infringe copyrights is necessary, *Fung*, 710 F.3d at 1038, that element of intent incorporates the "common law principles ... that intent may be imputed" to include the "natural and probable consequences of [one's] conduct." *Amazon*, 508 F.3d at 1170-71.  *See also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936, 943 (9th Cir. 2011) ("We have never held that an express finding of intent is necessary to support liability for contributory copyright infringement.  To the contrary, we have held that 'intent may be imputed' as a result of 'a service provider's knowing failure to prevent infringing actions.'").

In the context of *inducement* theory, intent is captured in the requirement that the defendant distribute the device or product with the "object of promoting its use to infringe a copyright . . . " *Fung*, 710 F.3d at 1032.  For *material contribution*, however, the intent element is manifested in the dual requirements that the service provider (1) had "actual knowledge that specific infringing material is available using its system," *Visa*, 494 F.3d 788 (internal quotes omitted); but (2) "failed to take reasonable and feasible steps to refrain from providing access to infringing images," *Amazon*, 508 F.3d at 1177.  Under the latter test, *intent can be lawfully imputed* from the defendant's failure to take "reasonable and feasible steps" in the face of specific knowledge.

Cloudflare's mistaken focus on the "inducement" theory dooms its arguments. Plaintiffs are not required to plead that Cloudflare possessed a wrongful intent to foster infringement, as would be required for *inducement*; rather, Plaintiffs can plead a claim for contributory infringement under a material contribution theory by pleading three elements: "(1) a defendant's substantial assistance to infringement; (2) the defendant's *actual* knowledge of *specific* infringements; and (3) the defendant's failure to take simple measures to prevent further harm to copyrighted works." *Amazon*, 508 F.3d at 1172.

Plaintiffs' allegations satisfy each of those elements:

1) Cloudflare assists infringement by temporarily hosting infringing content on its servers, which is accessed and viewed by Internet browsers visiting the infringing website, allowing visitors to access the infringing content faster and without discrepancies (*i.e.*, lag, drag, error messages, etc.), and making it easier for users to view infringing content and to interact with an infringing website. *See* FAC at ¶¶ 25-26, 38-43. Whether the alleged "assistance" is "substantial" enough to warrant imposition of liability is a question of fact that cannot be resolved at the motion to dismiss stage.

2) Plaintiffs have sent Cloudflare hundreds of takedown notices informing Cloudflare of the names of infringing websites that use Cloudflare's services as well as providing Cloudflare with specific URL links to the infringing images to which Plaintiffs hold exclusive copyrights. *See* FAC at ¶¶ 33-37; *see also* Exhibits A-E to the FAC. Even though Cloudflare contends that Plaintiffs' notices are inadequate, the sufficiency of the notices and the actual knowledge Cloudflare derived from those notices are questions of fact. Plaintiffs have alleged facts that, if true, satisfy the actual knowledge element of material contribution infringement.

3) A slow loading, jittery website is likely to dissuade visitors from browsing that website, especially if visitors are forced to wait an uncomfortably long time for pictures and images to load. *See* FAC at ¶ 41. By contrast, a fast-loading, smooth running website adds a level of credibility to the website and is more effective in engaging and holding the attention of its web visitors. After receiving notice of infringing content, Cloudflare could take the simple step of discontinuing its optimization services to the infringing client thereby removing the safe, speedy highway for Internet users to access and load the infringing content. *Id*. at ¶¶ 41-44. While termination of Cloudflare's services would not remove the infringing content from the web,

8

it would make the websites more difficult to access, make the websites less desirable and decrease the likelihood that users will purchase goods from the infringing websites, thereby preventing further damage to Plaintiffs and their copyrights. *Id*. at ¶ 41.

Contrary to Cloudflare's arguments, the recent Ninth Circuit decision in *Cobbler Nevada* did not undermine the holding in *Amazon* that wrongful intent, to the extent required under a material contribution theory, can be imputed based upon a defendant's knowledge and failure to act. *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) ("*Cobbler Nevada*"). The Court in *Cobbler Nevada* pointed to the absence of affirmative steps by the defendant in its analysis of the plaintiff's claim for *inducement* of copyright infringement, and thus did not even analyze the issue in the context of *material contribution* liability based upon knowledge and substantial contribution, as the circuit did in *Amazon*.  While failure to police *on its own* may not be a sufficient allegation to sustain a contributory infringement claim, a failure to act can satisfy the standards for contributory infringement when paired with substantial assistance and knowledge when evaluated under the *material contribution* theory of liability.

The Ninth Circuit in *Cobbler Nevada* did not address the question of the defendant's knowledge, noting that "[Plaintiff's] contributory infringement claim is premised on a bare allegation that [defendant] failed to police his internet service."  *Cobbler Nevada*, 901 F.3d at 1147–48.  The Ninth Circuit did not address the "knowledge" element because the district court noted in a footnote that there was no allegation that the takedown notices the plaintiff sent had been received by the defendant, and thus there were no allegations that the defendant knew about the alleged infringement.  That is a far cry from what is alleged here.

In any case, even if this Court were to find that affirmative steps are required for material contribution (which they are not as made clear by *Amazon*), courts have found that continuing to

9

provide services to an infringer that assist the infringement, after acquiring knowledge of the infringement, qualifies as affirmative steps. *See UMG Recordings, Inc. v. Grande*, 17-cv-00365-DAE-AWA, slip op. at 40 n. 6 (W.D. Tex. Mar. 15, 2019) ("the allegation is that [Defendant] took affirmative steps to foster infringement by continuing to provide internet service to specific customers about whom it had actual knowledge of repeated infringement."). Plaintiff's allegations satisfy the material contribution test articulated in *Amazon*.

### B.   Plaintiffs Have Adequately Pled Copyright Infringement Through *Material Contribution*

Stating a claim under the material contribution theory of contributory liability requires allegations that defendant knew or should have known of specific infringing material. *Napster*, 239 F.3d at 1020-21. Along with knowledge of specific infringing material, a plaintiff must also allege that the defendant materially contributed to the infringing conduct. *Visa*, 494 F.3d at 796. A party materially contributes to copyright infringement if the infringing activity would be substantially more difficult without that party's services. *Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Alleging that a defendant provided the "sites and facilities" for the infringement is adequate to plead material contribution. *See id.*; *Napster*, 239 F.3d at 1022.[1]

---

[1]   Cloudflare appears to suggest that knowledge plus material contribution is no longer a viable theory after *Grokster* if the product is "capable of substantial non-infringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) ("the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes."). But Cloudflare's reliance on *Sony* is a red herring in this context, for two reasons. First, substantial non-infringing use is at best a defense, and not a requirement for the pleading of the claim. Cloudflare does not cite any law to the contrary. Second, the *Sony* defense does not apply where, as here, the service has ongoing relationships with infringing customers, as Cloudflare does here with its website customers. *See, e.g., BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.,* 881 F.3d 293, 307-08 (4th Cir. 2018)("contrary to [defendant's] argument, the fact that its technology can be substantially employed for a noninfringing use does not immunize it from liability for contributory copyright infringement"); *Aritsa Records LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 156 (S.D.N.Y. 2009)(when "[d]efendants maintain an ongoing

A third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial."  *See Netcom*, 907 F. Supp. at 1375.  In *Amazon*, the Ninth Circuit analyzed the material contribution prong in the context of an Internet search engine operator and held that:

> a computer system operator can be held contributorily liable if it has *actual* knowledge that *specific* infringing material is available using its system, and can take *simple measures* to prevent further damage to copyrighted works, yet *continues to provide access* to infringing works.
>
> [*Amazon*, 508 F.3d at 1172 (internal quotations omitted) (emphasis added).]

Although an "actor's contribution to infringement must be material to warrant the imposition of contributory liability," the Ninth Circuit emphasized that "services or products that facilitate access to websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities."  *Id.* (internal quotations and citations omitted).

In *Amazon*, the district court dismissed a contributory liability claim against Google, a search engine operator, explaining that even assuming it had knowledge that links to websites displaying infringing material were made available using its search engine, because Google did not undertake promotional or advertising efforts to encourage visits to the infringing websites, it could not be liable for contributory infringement. *Id.* The Ninth Circuit reversed, explaining that:

> [t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even

relationship with their users…the noninfringing uses for Defendants' service are immaterial, [and] *Sony's* insulation from contributory liability is inapplicable").

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

Case No.: 19-CV-01356-VC

> though Google's assistance is available to all websites,
> not just infringing ones. Applying our test, Google could
> be held contributorily liable if it had knowledge that
> infringing [copies of plaintiff's] images were available
> using its search engine, could take simple measures to
> prevent further damage to [plaintiff's] copyrighted
> works, and failed to take such steps.

[*Id.*]

The Ninth Circuit thus remanded to the district court to resolve factual disputes over the

adequacy of the plaintiff's notices to Google of the infringement and Google's responses to the

notices, as well as factual disputes over whether there was a reasonable and feasible means for

Google to refrain from providing access to the infringing websites.  *Id.* at 1172-73.

Shortly after *Amazon*, the Ninth Circuit issued its decision in *Visa*.  In that case, the

plaintiff sued various credit card companies for contributory copyright infringement, alleging

that the credit card companies had contracted with banks to issue branded credit cards to

consumers, and the issuing banks then contracted with merchant banks to settle transactions

using those cards, including transactions for payments to Internet websites that infringed the

plaintiff's copyrights. *See Visa*, 494 F.3d at 792.  The plaintiff claimed that the credit card

companies had materially contributed to the websites' infringement because they were aware of

the infringement, yet continued to process credit card payments for the infringing websites.  *Id.*

at 795.

The Ninth Circuit held that the plaintiff had failed to allege facts sufficient to establish

material contribution, because the credit card companies had no direct connection to the

infringement, which was based on the reproduction, alteration, display and distribution of the

plaintiff's images over the Internet.  *Id.* at 796.  Specifically, the plaintiff had not alleged that any

infringing material passed over defendants' payment networks or through their payment

processing systems, or that defendants' systems were used to alter or display the infringing images.  *Id*.  The Court in *Visa* further distinguished *Amazon*, emphasizing that "Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials.  Defendants do not provide such a service.  They in no way assist or enable Internet users to locate infringing material, and they do not distribute it."  *Id.* at 797.

The law in the Ninth Circuit has always been clear.  An internet service provider may be contributorily liable for copyright infringement under the material contribution theory if it: (1) has actual knowledge of specific infringing activity, (2) is able, but fails to take simple measures to stop that infringement, and (3) continues to provide services to known infringers.  *See Amazon*, 508 F.3d at 1172. Like Google in *Amazon*, Cloudflare substantially assists websites to distribute their infringing copies of Plaintiffs' images to an American audience and assists users in the States to access – twice as fast and more efficiently – infringing materials.

### (i)    Knowledge

Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement.  *See Napster*, 239 F.3d at 1020.  Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement. *Id*.

Generally, "the copyright holder must provide the necessary documentation to show there is likely infringement." *Id*. at 1021.  If a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement.  *Id*. at 1022.  Computer system operators can be liable where, knowing that specific infringing materials are present on their systems and able to take "simple

measures" to limit infringement, they continue to provide access to the infringing materials. *Amazon.com*, 508 F.3d at 1172.

Here, Cloudflare obtained actual knowledge of infringing content on its servers by way of Plaintiffs' various DMCA notices.  *See* FAC at ¶¶ 34-36; *see also* Exhibits B-D to the FAC. Indisputably, a takedown notice under the DMCA would confer on Cloudflare actual knowledge of the specific acts of infringement identified in the notice.  *See Napster*, 239 F.3d at 1020 (receiving takedown notices is evidence of actual knowledge).

In order to comply with the DMCA (and therefore confer actual knowledge on the recipient), a takedown notice must identify "the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. §512(c)(3)(A)(iii) (emphasis added). "The goal of this provision is to provide the service provider with adequate information to find and address the allegedly infringing material expeditiously."  *Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F.Supp.2d 110, 115 (S.D.N.Y. 2013) (internal citations omitted).

Plaintiffs' notices do just that: they identify the copyright owner (*e.g.*, Maggie Sottero Designs), the infringing website (*e.g.*, www.anagowns.com), and provide the specific link to where the infringing content is found (*e.g.*, www.anagowns.com/cache/image/_/1660328-champagne-1_420x595.jpg).  *See* Exhibit C to the FAC.  These notices provided Cloudflare with all the information it needed in order to identify the location of the infringing material and to take steps to remove that material from its servers (or otherwise terminate or restrict services to its infringing client).

Cloudflare takes issue with the adequacy and sufficiency of Plaintiffs' notices; however, those are matters that present questions of fact not appropriate for resolution on a motion to dismiss.  *See, e.g.*, *Ellison*, 357 F.3d at 1077 (finding that a reasonable trier of fact could find that AOL has

reason to know that infringing copies of plaintiff's work were stored on servers based on evidence of a phone call and evidence that AOL changed its email address to avoid email complaints sent by plaintiff's attorney); *Miller v. Facebook, Inc.*, No. C 10-00264, 2010 U.S. Dist. LEXIS 61711, *21-22 (N.D. Cal. May 28, 2010) (finding that plaintiff's single letter to Facebook demanding that it remove infringing image clearly established actual knowledge).

Cloudflare's argument that Plaintiffs failed to allege actual knowledge of specific infringement because their notices identified only *claimed* infringement, as opposed to *adjudicated* infringement, is a perversion of copyright law.  The entire body of secondary liability in the Internet age is premised on the reality that a copyright owner cannot sue every direct infringer.  *Grokster*, 545 U.S. at 929-930 (2005) ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copyright device for secondary liability on a theory of contributory or vicarious infringement."). If a copyright owner needed to first adjudicate claims against direct infringers *before* contributory infringers could be deemed to have knowledge of the infringing activity, secondary infringement claims would as a practical matter cease to exist and never be viable. That is not the law in the Ninth Circuit or elsewhere.  Tellingly, Cloudflare does not cite any case or law to support its flawed theory.

In fact, the Fourth Circuit recently held that adjudication of infringement is not required to establish knowledge of repeat infringement.  *BMG v. Cox Communications*, 881 F.3d 293 (4th Cir. 2018).  The Court reasoned that the Copyright Act uses the term "infringer" to refer to all those who engage in infringing activity, and not just the narrow subset of those formally deemed

infringers by a court.  Although the case analyzes the phrase "repeat infringer," the same reasoning applies here.

Cloudflare also argues that the notices do not provide evidence of knowledge because the notices were deficient in that they were propounded under the allegedly wrong safe harbor provision of the DMCA.  The provision cited in the DMCA notice, however, has no bearing on Cloudflare's knowledge since the focal point of the inquiry is on the content and substance of information provided to the defendant rather than on the form or format.  The DMCA is an affirmative defense and cannot properly be the subject of this motion.

In particular, which safe harbor provision of the DMCA applies to Cloudflare is a question of fact that depends upon the specific manner in which Cloudflare provides its services. Cloudflare is attempting, in a motion to dismiss, to assert factual claims about its operations on which it will bear the burden of proof (if and when it chooses to assert such an affirmative defense under the DMCA) and have those assertions taken as fact for purposes of evaluating Plaintiffs' contributory infringement claims.  Cloudflare's arguments are therefore more appropriate for summary judgment and/or trial, and have no place in evaluating whether Plaintiffs' allegations, if true, state a claim for contributory copyright infringement.

Which DMCA safe harbor is applicable to Cloudflare's services, if any, is not relevant to whether Plaintiffs have adequately pled a claim for contributory infringement.[2]  The main purported technical defects that Cloudflare points to are that Plaintiffs' notices cite to §512(c) rather than §512(b) and that the notices do not contain the extra statement required by §512(b)

---

[2]    In any event, Plaintiffs believe that §512(c) rather than §512(b) will be the safe harbor that is relevant to Cloudflare, if any, due to the specific manner in which Cloudflare provides its service, and Plaintiffs intend to contest Cloudflare's entitlement to safe harbor under §512(b) if

noting that the source website of the cached material has removed or disabled access to it at the source or that a court has ordered it to do so.

These alleged defects are irrelevant for purposes of this motion. The applicable safe harbor provision of the DMCA has nothing to do with whether Plaintiffs' notices provided Cloudflare with sufficient knowledge of infringing activity to trigger liability for not taking simple, reasonable steps to prevent further damage to Plaintiffs' copyrights.  DMCA takedown notices are not the only way that a service provider can obtain knowledge of infringement. Takedown notices are a convenient way to demonstrate knowledge, but not the exclusive means. *See Napster*, 239 F.3d at 1020 (receiving takedown notices is evidence of actual knowledge); *Ellison*, 357 F.3d at 1077 (finding a reasonable jury could determine the defendant had reason to know that infringing copies of the plaintiff's work were stored on servers based on evidence of a phone call and evidence that the defendant changed its email address to avoid receiving email complaints); *Miller*, No. C 10-00264, 2010 WL 2198204 (finding allegations regarding a single letter sent to the defendant seeking to remove content were adequate to plead knowledge). Simply put, the technical requirements of the DMCA are not relevant here where the only question is whether Plaintiffs have plausibly pled knowledge.  The DMCA requirements and protections have nothing to do with whether notifications that do not satisfy all statutory requirements are sufficient to provide notice and knowledge of infringing activity. Construing Plaintiffs' factual allegations in a light most favorable to them and affording Plaintiffs the benefit of all reasonable inferences, this Court should be led inescapably to the conclusion that Plaintiffs have stated

---

and when Cloudflare presents this affirmative defense.  Plaintiffs' takedown notices comply with §512(c).

sufficient facts to support their allegation that Cloudflare had actual knowledge of specific acts of infringement.

### (ii)      Substantial Assistance

As indicated above, a third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Netcom*, 907 F. Supp. at 1375.   Website hosts, server operators, and search engines meet this threshold test, whereas credit card companies generally do not. *Compare Louis Vuitton*, 658 F.3d at 943 and *Amazon.com, Inc.*, 508 F.3d at 1172 to *Visa,* 494 F.3d at 796

Here, Plaintiffs contend that Cloudflare substantially assists primary infringement in three ways that support their claims.  *First*, Cloudflare's CDN service allows its customers to create and store copies of the allegedly infringing images on its cache servers.  *See* FAC at ¶¶ 25, 38, 42.  *Second*, Cloudflare's CDN network lets its website customers send infringing images to visitors faster and more efficiently than they could otherwise.  *Id*. at ¶¶ 25, 39, 41-42.  *Third*, Cloudflare conceals the identity and location of the main servers that host its clients' websites preventing Plaintiffs from taking action directly against the infringing sites' host server.  *Id*. at ¶ 26.

Plaintiffs have plausibly alleged that by providing server space and physically storing copies of infringing material on its data servers, Cloudflare has substantially assisted in the infringement.  *See Louis Vuitton,* 658 F.3d at 943 ("Material contribution turns on whether the activity in question 'substantially assists' direct infringement.... There is no question that providing direct infringers with server space satisfies that standard."); *Ellison*, 357 F.3d at 1078 (finding triable issue of fact where "reasonable trier of fact could conclude that [internet service provider] materially contributed to the copyright infringement by storing infringing copies of

18

[the infringing] works on its [network] and providing [] users with access to those copies"); *Netcom*, 907 F. Supp. at 1375 (holding that the fact that defendant's USENET service allowed defendant's subscribers access to copyrighted works was sufficient to raise a triable issue regarding material contribution). Without Cloudflare, the copies of infringing materials spread across Cloudflare's servers would not have been made.  Cloudflare does not dispute this point, and therefore, on that basis alone, Plaintiffs have properly alleged that Cloudflare substantially assisted in infringement by the creation of copies of infringing material on its CDN Network.

Instead, Cloudflare contends that Plaintiffs have not adequately pled substantial assistance because Plaintiffs have not identified the "actual speed difference" in loading time for an infringing website that utilizes Cloudflare's optimization services versus one that does not. Actual loading speed differences, however, are fact sensitive inquiries subject to discovery and expert testimony.  Plaintiffs have alleged that using Cloudflare's services, "a website, on average, loads twice as fast for visitors regardless of where they are located." *See* FAC at ¶ 25. In fact, Cloudflare markets its services by advertising that "[w]e automatically optimize the delivery of your web pages so your visitors get the fastest page load times and best performance." *Id*. at ¶ 23.

Unlike the credit card companies in *Visa*, which did not help consumers access infringing websites, Plaintiffs have alleged that Cloudflare's CDN service makes it faster and easier – specifically, "twice as fast" – for consumers across the world to access infringing websites and load infringing images from any location.  *Id*. at ¶¶ 23-30.  Cloudflare's assistance to its customers is directly related to the infringing activities because Cloudflare provides its customers with a faster, safer, and more efficient means by which to deliver their infringing content.

These allegations are sufficient to state a claim for material contribution under Ninth

19

Circuit precedent and place Cloudflare well within the ambit of the Ninth Circuit's substantial assistance framework.  *See, e.g., Amazon*, 508 F.3d at 1172 (emphasizing that "services or products that facilitate access to [infringing] websites across the world can significantly magnify the effects of otherwise immaterial infringing activities"); *Napster*, 239 F.3d at 1022 (emphasizing that "without the support services defendant provides, [] users could not find and download the music they want with the ease [provided by defendants]")(internal quotations and citations omitted).  Nothing more is required under the law.  Cloudflare is simply incorrect in suggesting that more is required.

Finally, Plaintiffs' allegations that "Cloudflare's service allows counterfeit sites and their hosts to conceal their identity from copyright owners" thereby preventing copyright holders from stopping the infringing activities and pursuing legal recourse against the infringing sites, *see* FAC at ¶ 26, support a material contribution claim.  *See, e.g., Amazon.com*, 508 F.3d at 1172 ("copyright holders cannot protect their rights in a meaningful way unless they can hold providers of [internet] services or products accountable"); *Napster*, 239 F.3d at 929-30 ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers.").  Plaintiffs have therefore adequately pled "substantial assistance".

### (iii)    Ability to Take Simple Steps to Avoid Further Damage

In passing, Cloudflare contends that it cannot be liable for material contribution because there are no "simple measures" it could take to prevent further damage to Plaintiffs' copyrighted works.  Cloudflare contends that even without Cloudflare's services the infringing material would remain on the web and accessible to the public – just without the protection and optimization provided by Cloudflare.  Def's Br. at p. 14.  Complete eradication of infringing

content is not the standard – a defendant may still be liable for material contribution regardless of whether it is able to completely halt infringing activity, so long as it is able to take measures to "prevent further damage" to the copyrighted works. *See Amazon*, 508 F.3d at 1172.

Here, the simple step Cloudflare could take in preventing further damage is obvious – it can end its business relationship with websites that it knows, or arguably knows, are serial infringers.  *See* FAC at ¶ 41.  Terminating its services would have an appreciable impact on the infringing activity, specifically in that it would take users twice as long to access and load the infringing images.  Additionally, termination of services would remove infringing content from Cloudflare's servers and make the infringing content more difficult to access by Internet users. *See Napster*, 239 F.3d at 1021-22 (holding defendant liable for material contribution where it could have blocked access to its system by the suppliers of infringing music files, thereby making it more difficult for users to find and download infringing files).

Therefore, Plaintiffs have adequately pled the existence of "simple measures" Cloudflare could take to prevent further damage to Plaintiffs' copyrighted works.  In any event, the extent to which reasonable measures exist is a factual issue to be resolved at a later stage in these proceedings. *See Amazon*, 508 F.3d at 1172-73 (remanding to district court to resolve "factual disputes over whether there are reasonable and feasible means for Google to refrain from providing access to infringing images").

### (iv)    Continued Access

Plaintiffs allege continued access.  They allege that despite having actual knowledge of specific infringement and being able to take simple steps to hinder its clients' infringing activities, Cloudflare continues to store cache copies of infringing content on its servers and continues to provide its infringing website clients with a faster, safer, and more efficient way to use infringing content for fiscal

gain and profit to the detriment of Plaintiffs.  *See* FAC at ¶¶ 42-45.  As such, Cloudflare is liable for contributory infringement.  *See Netcom*, 907 F. Supp. at 1375 (finding internet service provider liable for contributory infringement because the provider "allows [the primary infringer's] infringing messages to remain on its system and be further distributed to other [users] worldwide.  Thus, it is fair, assuming [the provider] is able to take simple measures to prevent further damages to plaintiffs' copyrighted works, to hold [the provider] liable for contributory infringement where [it] has knowledge of [the] infringing postings yet continues to aid in the accomplishment of [the infringing activity].").

## CONCLUSION

Cloudflare makes the same arguments here it unsuccessfully made in a very similar case in the Central District of California.  In 2016, a copyright owner filed suit against Cloudflare for contributory copyright infringement based (in part) upon material contribution allegations nearly identical to those advanced by Plaintiffs in this case.  *See* Complaint filed in *ALS Scan, Inc. v. Cloudflare, Inc., et al.*, Case No. 2:16-cv-5051 (C.D. Cal. Jul. 11, 2016) ("*ALS Action*").  In the *ALS Action*, Cloudflare filed a very similar motion to dismiss relying on substantially the same arguments presented on this motion.  In a thorough and well-reasoned opinion, the Court rejected Cloudflare's arguments and denied Cloudflare's motion to dismiss plaintiff's "material contribution" contributory infringement claim.  *See ALS Scan* MTD Order, 16-cv-5051, slip op. at 5-9 (C.D. Cal. Oct. 24, 2016) **(attached hereto as Exhibit "A")**.  The same result should be reached here.

Cloudflare contends that the recent decision in *Cobbler Nevada* now compels a different conclusion from that reached by the district court in the *ALS Action*.  Cloudflare is wrong, because *Cobbler Nevada* dealt only with the *inducement* theory of contributory liability and did not address the imputed intent element of the *material contribution* theory.  In that regard,

Cloudflare's insistence that Plaintiffs be required to plead "wrongful intent" regardless of which theory of contributory infringement is at play is misguided at best.  Under relevant Ninth Circuit precedent, Plaintiffs need only establish that Cloudflare (1) had actual knowledge of specific infringing activity, (2) was able, but failed to take simple measures to stop that infringement, and (3) continued to provide services to known infringers, in order to maintain an action for contributory infringement under a material contribution theory.  *See Amazon*, 508 F.3d at 1172. Plaintiffs have satisfied each of those elements.

For all of the foregoing reasons, Cloudflare's motion to dismiss must be denied.

Dated: May 17, 2019                                OWENS & GACH RAY


                                        By: s/ *Robert B. Owens*
                                            Robert B. Owens
                                            Attorneys for Plaintiffs
                                            MON CHERI BRIDALS, LLC and
                                            MAGGIE SOTTERO DESIGNS, LLC

23