ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MON CHERI BRIDALS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CLOUDFLARE, INC., and DOES 1–500, Inclusive,<br><br>Defendants. | Case No.: 19-cv-01356-VC<br><br>**DEFENDANT CLOUDFLARE, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:        June 19, 2019<br>Time:        10:00 a.m.<br>Courtroom:   4<br>The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. THE PLAINTIFFS HAVE CONCEDED THEY HAVE NO CLAIM UNDER THE APPLICABLE LEGAL STANDARD. ............................................................................ 2

    A. *Amazon.com* Applied the *Grokster* Contributory Infringement Standard, Refining It for Computer System Operators. ........................................................ 2

        1. *Grokster* Established Two Categories of Contributory Infringement Liability. ................................................................................ 2

        2. Intent Is a Necessary Element of Contributory Infringement. ................... 2

        3. *Amazon.com* Tailored the *Grokster* "Inducement" Category to Computer System Operators. .................................................................... 3

        4. *Cobbler Nevada* Clarified the Ninth Circuit Standard Under *Grokster*'s "Well-Settled Rule." ................................................................. 4

    B. Safe Harbor Analysis Is Premature Before a Determination of Liability. ............... 5

III. EVEN APART FROM THEIR CONCESSION, THE PLAINTIFFS FAIL TO STATE A CLAIM THAT CLOUDFLARE INDUCED INFRINGEMENT. ...................... 5

    A. The Plaintiffs Fail to Allege Facts Showing "Substantial Assistance." .................. 5

    B. The Plaintiffs Fail to Plead Actual Knowledge of Specific Infringements That Cloudflare Could Address with Any "Simple Measures." ..................................... 7

    C. The Plaintiffs Fail to Allege That Cloudflare Failed to Take Any Appropriate "Simple Measures" to Prevent Further Harm to Their Copyrights. ........................ 8

IV. FURTHER AMENDMENT WOULD BE FUTILE. ........................................................ 10

V. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**  PAGE(S)

*ALS Scan, Inc. v. Cloudflare, Inc.*,
  No. 16-05051-GW-AFM, Dkt. 60 (C.D. Cal. Oct. 24, 2016) .................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................9

*Cobbler Nev., LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) .....................................................................................2, 4, 10

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ................................................................................................4

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ..................................................................................................7

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016) ................................................................................................8

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (en banc) .............................................................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ...................................................................................................... passim

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ........................................................................................ passim

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ..................................................................................................6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .............................................................................................3, 4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ............................................................................................................2, 3

**STATUTES**

17 U.S.C. § 512 (The Online Copyright Infringement Liability Limitation Act, part of
  the Digital Millennium Copyright Act) ............................................................................ passim

I. **INTRODUCTION**

The plaintiffs allege infringements by websites that sell counterfeited dresses using their marketing images, but the plaintiffs have failed to allege plausibly that Cloudflare has engaged in contributory infringement by inducing the alleged infringements.

The parties are in general agreement on the relevant legal standard, which requires intentional misconduct to show contributory infringement under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005), Opposition (Dkt. 43) at 7. They also agree that *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170–72 (9th Cir. 2007), establishes the proper contributory infringement standard under *Grokster* for online services. Dkt. 43 at 8.

Yet plaintiffs concede important facts that preclude their ability to meet the standard and are therefore fatal to their claims. The plaintiffs concede that they do not allege that Cloudflare induces the infringement (Dkt. 43 at 6–7); they do not deny that Cloudflare has substantial non-infringing uses (*Id.* at 10 n.1). The plaintiffs also admit that Cloudflare is not a hosting provider and does not create or control material on customer websites. *Id.* at 2. They further concede that, even if Cloudflare terminates service to customers, termination would not remove the sites or their material from the web. *Id.* at 8.

Together, these concessions establish that the plaintiffs state no claim for contributory copyright infringement and cannot do so in the future. Notably, in light of their own pleadings and arguments to this court, the plaintiffs are, and will be, unable to allege facts sufficient to show that Cloudflare intentionally induced infringements in any fashion. They have not alleged, and cannot allege, facts showing that Cloudflare substantially assisted infringers with actual knowledge of specific infringements and failed to take simple measures to prevent further damage to the plaintiffs' copyrighted works. While not a simple measure, even Cloudflare's termination of services to the accused websites would not prevent further damage to the plaintiffs' marketing images.

## II. THE PLAINTIFFS HAVE CONCEDED THEY HAVE NO CLAIM UNDER THE APPLICABLE LEGAL STANDARD.

*Grokster* is clear: to prevail on their single claim of contributory infringement the plaintiffs must show that (1) Cloudflare intentionally induced infringements or (2) provided a service that is incapable of significant non-infringing uses. The plaintiffs have never asserted that Cloudflare's service is incapable of substantial non-infringing uses; they did not contradict Cloudflare's argument on that point in its opening brief, Dkt. 40 at 10. Fatally, the plaintiffs also concede they do not allege that Cloudflare has induced infringement. Dkt. 43 at 6. The plaintiffs have thus conceded they cannot state a claim for contributory infringement under the relevant standard.

### A. *Amazon.com* Applied the *Grokster* Contributory Infringement Standard, Refining It for Computer System Operators.

#### 1. *Grokster* Established Two Categories of Contributory Infringement Liability.

The Supreme Court established that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930. Justice Ginsburg summarized the two different "categories" of liability under the Supreme Court's jurisprudence as (1) "actively encouraging (or inducing) infringement through specific acts" or (2) "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942 (Ginsburg, J., concurring). In establishing the standard, the Court recast its earlier decision in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (acknowledging a contributory infringement standard but not adopting it), as turning on wrongful intent. *See Grokster*, 545 U.S. at 933–34.

#### 2. Intent Is a Necessary Element of Contributory Infringement.

The plaintiffs concede that contributory infringement "must be intentional," Dkt. 43 at 7 (citing *Grokster*, 545 U.S. at 930, and *Amazon.com*, 508 F.3d at 1170). The intent requirement also underlies the Supreme Court's second category of contributory copyright infringement: intent may be presumed from a lack of a substantial non-infringing use. *See Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) (discussing *Sony*, 464 U.S. at 442) Otherwise,

intent is an explicit requirement for contributory infringement. *Id.* The plaintiffs do not allege that Cloudflare's service lacks substantial non-infringing uses and must therefore allege a wrongful intent to foster infringement.

A valid claim must allege facts that fairly allow an imputation of wrongful intent. *See id.* (quoting *Amazon.com*, 508 F.3d at 1170–71, and *Grokster*, 545 U.S. at 934–35). Plaintiffs must allege that Cloudflare "knowingly [took] steps that [were] substantially certain to result in . . . direct infringement." *Amazon.com*, 508 F.3d at 1171. The plaintiffs' failure and inability to do so cannot survive this motion to dismiss.

### 3. *Amazon.com* Tailored the *Grokster* "Inducement" Category to Computer System Operators.

The plaintiffs point to *Amazon.com* as the legal standard. Dkt. 43 at 8. The Court must apply that decision consistently with the intentional inducement category of *Grokster*. To claim contributory copyright infringement against a computer system operator, the plaintiffs must plead all these elements: (1) substantial assistance to infringements by the defendant, (2) actual knowledge of specific infringements, and (3) the defendant's failure to take simple measures to "prevent further damage" to copyrighted works. *Amazon.com*, 508 F.3d at 1172.

The plaintiffs attempt to avoid the need to prove intentional inducement by drawing a false distinction between "material contribution" and inducement. Dkt. 43 at 6. To do so, they would have to rely on a contorted characterization of "material contribution" to escape their inability to plead inducement. They cannot do so. The Ninth Circuit explicitly developed *Amazon.com*'s standard "under the first category of contributory liability identified by the Supreme Court," namely inducement. *Amazon.com*, 508 F.3d at 1170. Before *Grokster*, the Ninth Circuit's standard included "material contribution" language, but the Ninth Circuit has since conformed its standard to the Supreme Court's teaching. *Amazon.com*, 508 F.3d at 1171. ("Our tests for contributory liability are consistent with the rule set forth in *Grokster*.") There is no third category of contributory infringement beyond what the Supreme Court articulated.

The Ninth Circuit explained the "various formulations" of contributory infringement standards are "non-contradictory variations on the same basic test." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). "While the *Amazon.com* court did not bifurcate its analysis of contributory liability into 'material contribution' liability and 'inducement' liability, it did recognize that contributory liability 'may be predicated on actively encouraging (or inducing) infringement through specific acts.'" *Id.* at 801. Material contribution is not a separate "theory" of contributory infringement but instead a way of characterizing imputed intent.[1] In *Fung*, the Ninth Circuit's discussion of *Grokster* shows that what the plaintiffs refer to as an inducement "theory" is really about forms of direct evidence that support contributory infringement as opposed to mere circumstantial evidence (such as failure to develop filtering mechanisms and advertising-based business models). "[C]opyright liability depends on one's purposeful involvement in the process of reproducing copyrighted material," whether that is express intent to encourage infringement or knowing action that furthered infringement. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013); *see also id.* at 1034–36. Both fall under *Grokster*'s first category of liability and are equivalent.

### 4. *Cobbler Nevada* Clarified the Ninth Circuit Standard Under *Grokster*'s "Well-Settled Rule."

*Cobbler Nevada* is an important decision, integrating and summarizing the Ninth Circuit's jurisprudence. *See Cobbler Nev.*, 901 F.3d at 1148. *Cobbler Nevada* applied "the first strand" of contributory infringement under *Grokster*: inducement. *Id.* The Ninth Circuit applied the framework for "technology-based cases" following *Amazon.com* under *Grokster*. *Id.* The Ninth Circuit observed that no allegations suggested the defendant "actively induced *or materially contributed* to the infringement through 'purposeful, culpable expression and conduct.'" *Id.* (quoting *Grokster*, 545 U.S. at 937) (emphasis added). This framing reflects that

---

[1] The term "material contribution" is vague and unintelligible to juries. "Induce" and "encourage" are clearer, and both *Grokster* and *Amazon.com* phrase the standard in a way that juries can understand and meaningfully apply.

CLOUDFLARE'S REPLY ON MTN TO
DISMISS AMENDED COMPLAINT                    4                    Case No.: 19-CV-01356-VC

the Ninth Circuit treats material contribution and inducement as equivalent, with *both* requiring clear expression or other affirmative steps to further infringement. *See id.*

The plaintiffs concede they do not allege inducement. "While Cloudflare contends that the Plaintiffs have not satisfied the 'inducement' theory of contributory liability, *Plaintiffs have not attempted to do so* . . . ." Dkt. 43 at 6 (emphasis in original). Because they have not alleged liability under this first *Grokster* category or its second category, this concedes defeat.

### B. Safe Harbor Analysis Is Premature Before a Determination of Liability.

The plaintiffs accurately state that the safe harbor under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, is "not relevant to whether Plaintiffs have adequately pled a claim for contributory infringement." Dkt. 43 at 16. Safe harbor is a remedies limitation that applies where a defendant is a copyright infringer. "A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright . . . ." 17 U.S.C. §§ 512(a)–(d). Safe harbor analysis is irrelevant to a complaint because a failure to qualify for safe harbor does not establish a cause of action. Here, the plaintiffs fail to plead contributory infringement, so Cloudflare need not address safe harbor. The structure of the safe harbor, however, illuminates the fact that notifications of *claimed* infringement do not confer *actual knowledge* of specific infringements under the substantive *Amazon.com* standard for contributory infringement, as Cloudflare discusses below at pp. 7–8.

### III. EVEN APART FROM THEIR CONCESSION, THE PLAINTIFFS FAIL TO STATE A CLAIM THAT CLOUDFLARE INDUCED INFRINGEMENT.

Under *Grokster* and its progeny, the plaintiffs must show that Cloudflare intentionally induced the infringements at issue. Applying the *Amazon.com* framework in the online services context to their claim demonstrates why plaintiffs have not attempted to allege inducement. Plaintiffs' inability to allege all of the elements under *Amazon.com* is fatal to their claim.

### A. The Plaintiffs Fail to Allege Facts Showing "Substantial Assistance."

The plaintiffs claim that Cloudflare substantially assists direct infringers[2] by making

---

[2] The plaintiffs amended the complaint to add a direct infringement claim against Does 1–500. *See* Dkt. 28 ¶¶ 46–49; *cf.* Dkt. 1. In their opposition, the plaintiffs do not discuss direct

website access faster and easier, caching materials hosted on websites, and "concealing" website host identity. Dkt. 43 at 18; Amended Compl. (Dkt. 28) at ¶ 1. The plaintiffs rely on *conclusions resting on generalizations* to assert this element and fail to plead *facts* to support a claim.

Because Cloudflare does not host the material at issue and is unable to remove the allegedly infringing material from the Internet, the plaintiffs are left to vaguely allege "quicker, faster access" (*see* Dkt. 28 at ¶ 39), when Cloudflare caches some material to improve network performance. This suggests something significant, but the facts, which plaintiffs omit, show the difference in page loading times to be milliseconds. That difference is not plausibly significant. Information on the actual time difference that caching services provide is available to the plaintiffs, so their omission of actual times is an artful and purely conclusory pleading. With that critical omission, the plaintiffs fail to plead facts of substantial assistance.

The Ninth Circuit explained the "substantial assistance" element in *Amazon.com* by stating that some products or services can "*significantly magnify* the effects of *otherwise immaterial* infringing activities." *Amazon.com,* 508 F.3d at 1172 (emphasis added). In the Ninth Circuit's view, Google's search engine apparently did that; the search engine allows persons around the globe to find otherwise obscure infringements immediately. *See id.* While a search engine leads users to find and access websites that may contain infringing content, Cloudflare's service does not lead users to find any sites to access. Moreover, a difference in milliseconds of the loading of a web page that is equally available to the world with or without Cloudflare's service does not "significantly magnify the effects of other immaterial infringing activities." Thus, Cloudflare's service does not "substantially assist" alleged infringements by its customers.

---

infringement or the Does. This departs from the plaintiffs' claimed typical litigation strategy to pursue direct infringers. *See* Dkt. 28 ¶ 20. In their opposition brief, the plaintiffs use language that appears to assert direct infringement against Cloudflare, which differs from the amended complaint. Dkt. 43 at 1. ("Cloudflare copies and distributes copies of Plaintiffs' copyrighted works with actual knowledge that they are infringing.") This is improper. In any case, the plaintiffs cannot meet the *Giganews* volition test to plead direct infringement against Cloudflare. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669 (9th Cir. 2017).

The plaintiffs also allege in passing that Cloudflare substantially assists infringers by concealing the identity of website hosts. Dkt. 28 at ¶ 26. Even if concealment were a form of substantial assistance (unlikely in a world where some jurisdictions, such as Europe, *require* privacy of customer identities), the amended complaint artfully avoids stating any *facts* of concealment, leaving it to the reader's imagination. As the plaintiffs know, Cloudflare routes web site traffic through its own network and its own IP addresses to deflect attacks upon its customers' networks. That is not plausibly "concealment" of its customers' IP addresses. Moreover, as the plaintiffs should know (and Cloudflare discloses at www.cloudflare.com/abuse), Cloudflare provides information about hosts of its customers' websites in response to notifications of claimed infringement. It also provides information about its customers in response to valid subpoenas under the Copyright Act. *See* 17 U.S.C. § 512(h). The plaintiffs' artful pleading of conclusions is no substitute for fact allegations. They have failed to allege substantial assistance by concealment.

> **B.     The Plaintiffs Fail to Plead Actual Knowledge of Specific Infringements That Cloudflare Could Address with Any "Simple Measures."**

The rule plaintiffs propose, that notifications of claimed infringement "indisputably" confer actual knowledge of specific infringements, is both false and unworkable. *See* Dkt. 43 at 14. First, attaching a deficient sample to their amended complaint, the plaintiffs rely on *insufficient* notifications of claimed infringement to allege Cloudflare's actual knowledge. *See* Dkt. 43 at 8, 14. The notifications do not work for a system caching provider like Cloudflare. *See* Dkt. 40 at 12–13.

Second, the plaintiffs misleadingly invoke constructive knowledge when discussing the actual knowledge requirement. Dkt. 43 at 13. Intent may be imputed through actual knowledge, but the Ninth Circuit has rejected constructive knowledge and any lower standard. *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 834 (9th Cir. 2019). Actual knowledge is necessary.

Third, even formally valid DMCA notifications of *claimed* infringement do not confer actual knowledge of *infringements*. The DMCA provides an optional process for online services

DISMISS AMENDED COMPLAINT                     7                     Case No.: 19-CV-01356-VC

to step out of disputes between copyright holders and the services' customers, with notifications of claimed infringement and counter-notifications and possible court intervention. *See* 17 U.S.C. § 512(b), (c), (d), and (g). Cloudflare's abuse system assists that process, forwarding claims to hosting providers who can take effective action. If notifications of claimed infringement created actual knowledge of infringement, valid counter-notifications would not exist and there would be no reason for the counter-notification procedure under 17 U.S.C. § 512(g). Similarly, 17 U.S.C. § 512(b)(2)(E) sometimes requires a court order before a caching service, like Cloudflare, needs to respond to a notification. In the absence of a court order, Cloudflare does not know the authoritative legal status of any material. If notifications of infringement *claims* established infringement, a court order ruling on infringement, as well as the optional statutory process the DMCA provides, would be unnecessary. The DMCA framework thus acknowledges that some notifications may be improper.[3] The number of notifications the plaintiffs sent does not alter these considerations. *See* Amended Complaint (Dkt. 28) at ¶ 33. Hundreds of *insufficient* notifications remain *insufficient*.

Fourth, under the plaintiffs' own argument resting on DMCA notifications, a service provider would have actual knowledge that the *plaintiffs* were infringers if the accused website owners were to turn the tables and send notifications accusing the plaintiffs of infringements. A notification is a claim, a claim may be unsubstantiated, and knowledge of a claim is not actual knowledge of infringement. It is not a "perversion of copyright law" for service providers to act only on valid, complete notifications and to protect users from malicious activity. *Cf.* Dkt. 43 at 15. In all these ways, the plaintiffs fail to allege actual knowledge of specific infringements.

C. **The Plaintiffs Fail to Allege That Cloudflare Failed to Take Any Appropriate "Simple Measures" to Prevent Further Harm to Their Copyrights.**

The plaintiffs' punting on what constitutes a "simple measure" for Cloudflare exposes their inability to plead that Cloudflare failed to take any appropriate simple measures to prevent

---

[3] In *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016), the Ninth Circuit held that there was a triable issue of fact whether the copyright holder acted in good faith sending a notification. *Id.* at 1148. Bad-faith notifications do not facially differ from good-faith notifications, so notifications alone cannot provide actual knowledge of specific infringements.

further damage to copyrighted works. At times, the plaintiffs demand that Cloudflare terminate services to customers. Dkt. 43 at 8–9; Dkt. 28 at ¶ 41. In the opposition brief (but not the amended complaint), the plaintiffs propose other "simple measures," such as removing cached content from servers or revealing the identity of an infringing site's host. Dkt. 43 at 4, 21. The opposition brief undermines the amended complaint and calls into question whether the plaintiffs can plausibly allege a valid cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Simple measures must be "reasonable and feasible means" to limit damage to copyrighted works. *Amazon.com*, 508 F.3d at 1172–73. Such measures should target infringing works. *See id.* Termination of services to entire websites, the "simple measure" the plaintiffs propose, would be a blunt response that would harm all website material, whether infringing or not. A "simple measure" should be proportionate and not cause collateral damage.

Simple measures must also "prevent further damage to copyrighted works," *id.*, or as the plaintiffs put it, "stop" the infringements. Dkt. 43 at 13. But the plaintiffs concede that Cloudflare's termination of service or removal of the caches that improve network performance would not stop the infringements: they would not remove the alleged infringers or their material from the web. Dkt. 43 at 8. As the plaintiffs allege but artfully avoided fully revealing in their pleading, termination might slow loading time (but only by milliseconds) for persons who have sought out the websites. Dkt. 28 at ¶ 41.

Similarly, removing any images from Cloudflare's servers would not permanently remove infringing material even from the servers. A cache automatically and rapidly refreshes itself to mirror the underlying website. When a host site removes material, the cache will delete that material when it updates itself. Without the website or host removing the infringing material, however, refreshed caches will keep including the material. Thus, removing cached material is not a simple measure that would prevent further damage to copyrighted works.

Other service providers for the accused infringers can take simple measures against the alleged infringements. The plaintiffs are familiar with this because of their litigation campaign targeting direct infringers. *See* Dkt. 28 at ¶ 20. Hosting providers can remove files upon

receiving valid notifications with the URLs of the accused material. The plaintiffs' notification, targeting a hosting provider, recognizes this. Dkt. 28-3. But Cloudflare has no simple measures to prevent further damage to copyrighted works here, and the plaintiffs fail to plead any.

## IV.     FURTHER AMENDMENT WOULD BE FUTILE.

The Court should dismiss the complaint with prejudice because "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations omitted). Here, both the plaintiffs' attempts to water down the legal standard and their own admissions demonstrate that amendment would be futile. Despite amending their original complaint, obtaining an extension to file their opposition, and violating the Court's page limit without leave,[4] the plaintiffs fail to state a plausible claim.

## V.     CONCLUSION

Because the plaintiffs have incurably failed to allege facts to support any formulation of contributory infringement liability, the Court should grant Cloudflare's motion and dismiss the claim against Cloudflare with prejudice.

Dated: May 30, 2019                              FENWICK & WEST LLP

                                                 By:  */s/ Andrew P. Bridges*
                                                      Andrew P. Bridges
                                                 Attorneys for Defendant CLOUDFLARE, INC.

---

[4] Along with their 23-page brief, the plaintiffs filed a 15-page appendix consisting of an interlocutory ruling by Judge George Wu of the Central District of California on Cloudflare's motion to dismiss in *ALS Scan, Inc. v. Cloudflare, Inc. et al.*, No. 16-05051-GW-AFM, Dkt. 60 (C.D. Cal. Oct. 24, 2016). *See* Dkt. 43-1. The plaintiffs model their case on the plaintiff's effort in *ALS Scan*. They initially filed their case in the Central District of California seeking assignment to Judge Wu, but he declined to accept the case. Dkt. 11. Judge Wu's decisions in *ALS Scan* pre-dated *Cobbler Nevada,* and erroneous doctrinal distinctions the plaintiffs assert here come from Judge Wu's orders in *ALS Scan*. Cloudflare learned from the misunderstandings in the earlier case and explains the law differently with different counsel here. The unpublished order the plaintiffs cite is neither precedent for nor collateral estoppel for this suit. Nor should it be persuasive in any way.