ROBERT B. OWENS (Bar No. 77671)
rowens@ogrlaw.com
OWENS & GACH RAY
10323 Santa Monica Blvd., Suite #102
Los Angeles, CA 90025
Ph: (310) 553-6611
Fax: (310) 954-9191

CRAIG S. HILLIARD
chilliard@stark-stark.com
STARK & STARK, P.C.
993 Lenox Drive, Bldg. Two
Lawrenceville, NJ 08648
Ph: (609) 895-7346
Fax: (609) 895-7395
(*PRO HAC VICE* APPLICATION GRANTED)

Attorneys for Plaintiffs
MON CHERI BRIDALS, LLC and
MAGGIE SOTTERO DESIGNS, LLC

ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MON CHERI BRIDALS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CLOUDFLARE, INC., and DOES 1–500, Inclusive,<br><br>Defendants. | Case No.: 19-cv-01356-VC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:         July 31, 2019<br>Time:        10:00 a.m.<br>Courtroom: 4<br>The Honorable Vince Chhabria |

The parties to the above-entitled action jointly submit this joint case management statement & proposed order pursuant to the Standing Order for All Judges of the Northern District of California dated November 1, 2018, Federal Rule of Civil Procedure 26(f), and Civil Local Rule 16-9.

## 1. JURISDICTION & SERVICE

Subject matter jurisdiction exists under 18 U.S.C. §§ 1331, 1338.  The parties have no dispute regarding personal jurisdiction or venue.  The plaintiffs have not yet identified or served the 500 Doe defendants.

## 2. FACTS

### a. Plaintiffs' Statement of Facts

Plaintiffs are designers and manufacturers of wedding gowns, prom dresses and other formalwear.  They own the copyrights in photographic images of their dress collections which are used on their websites and in other marketing materials to sell their products.  In exchange for a fee, Cloudflare provides its content delivery network (CDN) service to websites which illegally copy and use those images owned by plaintiffs to sell knockoff formalwear.  In providing that service, Cloudflare substantially assists its customers conduct their infringing activities, by (among other things) enabling their customers' websites to load faster for consumers who visit those sites, and by masking the identities of their customers from detection by copyright owners.  Plaintiffs have transmitted scores of notices to Cloudflare, advising the company of their ownership of copyrights in the images, and the precise URLs of the infringements of those images on Cloudflare's customers' websites, yet Cloudflare takes no action to terminate the services it provides to these known infringers, and fails to enforce its own written anti-infringement policies.

### b. Cloudflare's Statement of Facts

In pursuit of its mission to help build a better Internet, Cloudflare is an Internet infrastructure company that makes security and performance services available to a significant percentage of the Internet, including more than 18 million Internet properties and 17% of the

world's top 100,000 websites. Cloudflare's services are the only widely-available services of its type available to website operators at low or no cost, which can be essential for websites trying to defend against things like widespread Distributed Denial of Service ("DDoS") attacks.

Cloudflare's distributed global network of 180 data centers serve as a gatekeeper between website hosts and the Internet users who seek visit those websites. Cloudflare's network will screen incoming requests for known or suspected cyberattacks, Cloudflare will also cache some content from websites for a limited period to improve performance and efficiency. Importantly, Cloudflare does not host the websites that use its services or alter the content that is delivered to the website visitor, which appears exactly as it exists on the host. Even if Cloudflare were to terminate its services, the content would still be available on the website host; the website will simply be more susceptible to cyberattack.

Through its abuse reporting process, Cloudflare receives court orders or administrative orders making objective findings of copyright infringement; it also receives unverified allegations from interested parties regarding copyright infringement. Because Cloudflare helps move bits of data around the internet, but does not have tools to review, analyze, or evaluate content, it is not in a position to determine if such infringement exists unless it were to adjudicate the allegations made by interested parties that brought their complaint to Cloudflare's abuse rather than pursuing them in court or other administrative proceedings. In such cases, it has no actual knowledge of specific infringements.

Cloudflare's services are of general use for anyone with a website. Cloudflare does not induce or encourage infringement of anyone's copyrights, especially by clear expression or other affirmative steps to foster infringement, and Plaintiffs have not alleged that Cloudflare has done so with respect to their copyrights. To facilitate abuse claims like those made by Plaintiffs, Cloudflare has set up an automated system that responds to abuse complaints by forwarding the complaint to the website owner and the website hosting provider; it also provides the complaining party information identifying the hosting provider and contact information for the hosting provider. The hosting provider is in a position to remove the content if appropriate, and

the host generally has responds to allegations of copyright infringement under the Safe Harbor provisions of the Digital Millennium Copyright Act section 512(c).  Cloudflare will respond to a subpoena for identifying information regarding the website owner pursuant to 17 USC 12(h), or a request to clear content stored in its cache in response to a request consistent with 512(b).  Cloudflare also has a policy to disable access to its services or terminate a customer account in appropriate circumstance where the user is determined to be a repeat infringer.

Plaintiffs are the manufacturers of wedding dresses who are concerned about third-parties who are allegedly selling copies of those dresses.  Yet, they are not pursuing a claim for copying their dresses (the law doesn't protect those designs), nor have they actively pursued the operators of websites that publish their pictures of their dresses (they didn't even include them by reference in the original complaint), nor have they actively pursued notice or claims against the hosting providers that store the allegedly infringing content.  Instead, they have focused on suing Cloudflare as one of the links on the chain of Internet transmission, like a bandwidth Internet Service provider, or a domain registrar, or a DNS service provider, or the electric utility that powers the computers used to view the allegedly infringing photos.  Even the notices Plaintiffs submitted to Cloudflare were deficient because Plaintiffs treated Cloudflare as the website host and didn't undertake the minimal effort it would have taken to submit those notices properly and in a legally sufficient manner, something that Cloudflare's automated abuse process is set up to support.

The services offered by Cloudflare to the allegedly infringing parties are not essential to the infringement, do not encourage or solicit the allegedly infringing behavior, and do not materially contribute to infringement that would happen anyway.  Cloudflare is unable to remove the allegedly infringing material from the website host, and thereby, make it unavailable on the Internet.

      c. **Principal Factual Issues in Dispute**

**Plaintiffs' statement**:  The principal factual issues in dispute include:  1) whether Cloudflare substantially assisted the direct infringement engaged in by its customers; 2) whether

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT                              4                        Case No.: 19-CV-01356-VC

Cloudflare had actual knowledge of specific acts of infringement; 3) whether Cloudflare failed to take simple measures which would have prevented further damage to plaintiffs' copyrighted images; and 4) whether and to what extent plaintiffs have been damaged.

**Cloudflare's statement**:  The principal factual issues in dispute are these:

1. Whether Cloudflare provides transitory network communications services to the accused customers in this case.
2. Whether Cloudflare provides system caching online services to the accused customers in the case.
3. Whether Cloudflare speeded delivery of website content for the customers the plaintiffs have accused in this case; by what amount of time, if any, Cloudflare speeded delivery; and whether that speed difference substantially assisted any alleged infringements by the accused website customers.
4. Whether Cloudflare has significantly magnified otherwise immaterial infringements by its accused customers.
5. Whether Cloudflare's services had any material effect on alleged direct infringements by its accused customers.
6. Whether Cloudflare had actual knowledge of specific infringements of the plaintiffs' works by its accused customers.
7. What "simple measures," if any, are available to Cloudflare to prevent further damage to the plaintiffs' copyrights by Cloudflare's accused customers.
8. Whether Cloudflare failed to use any available simple measures to prevent further damage to the plaintiffs' copyrights by Cloudflare's accused customers.
9. Whether Cloudflare is a system caching online service provider within the meaning of 17 U.S.C. § 512(b).
10. Whether the plaintiffs failed to send Cloudflare any compliant notifications of claimed infringement under 17 U.S.C. § 512(b).

11. Whether the plaintiffs ever notified Cloudflare that its accused customers had removed material infringing upon the plaintiffs' rights from their websites.

12. Whether the plaintiffs ever notified Cloudflare that a court had ordered its accused customers to remove material infringing upon the plaintiffs' rights from their websites.

13. Whether Cloudflare satisfied the conditions of the optional safe harbors available to it under 17 U.S.C. § 512.

14. Whether the plaintiffs have previously enforced their copyrights against any of the "John Doe" defendants in this case.

**3. LEGAL ISSUES**

The contributory copyright infringement standard from the Ninth Circuit is articulated in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007). The central legal issue is whether Cloudflare (1) substantially assisted direct infringement with (2) actual knowledge of specific acts of infringement and (3) failed to take simple measures to prevent further damage to copyrighted works. Cloudflare believes that the Supreme Court established the legal standard for contributory copyright infringement in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), as the Ninth Circuit has articulated repeatedly in the context of online services and conduct in *Amazon.com*, 508 F.3d at 1169–73, and in *Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1147–49 (9th Cir. 2018). To be consistent with *Grokster*, the *Amazon.com* standard that the plaintiffs rely on must apply in a way that evidences intentional inducement of infringement of the plaintiffs' copyrights by clear expression or other affirmative steps to foster infringement. Plaintiffs disagree, and believe that this Court already considered and rejected Cloudflare's view on the standard under Ninth Circuit precedent in its Order denying Cloudflare's motion to dismiss (Dkt. No. 54).

Apart from the substantive standard for copyright infringement, a legal issue is what optional safe harbors apply to Cloudflare under the Online Copyright Infringement Liability Limitation Act. Cloudflare asserts that it is entitled to, and qualifies for, the safe harbors under

sections 512(a) and 512(b) of the Copyright Act.  Plaintiffs dispute that Cloudflare is entitled to any of these safe harbor protections.

**4. MOTIONS**

The parties have filed the following motions in this action:

a. While the case was in the Central District of California, Cloudflare filed two motions.  Cloudflare filed its motion to dismiss the complaint for failure to state a claim, (Dkt. No. 23), which the court mooted following the plaintiffs' amendment of the complaint.  Dkt. No. 29. Cloudflare filed its motion to transfer, (Dkt. No. 24), which the court granted on March 12, 2019.  Dkt. No. 33.

b. Before this Court, Cloudflare filed a motion to dismiss the amended complaint for failure to state a claim.  Dkt. No. 39.  That motion was denied by an Order of the Court entered on July 11, 2019.  Dkt. No. 54.

**5. AMENDMENT OF PLEADINGS**

The plaintiffs have already amended their complaint once in response to Cloudflare's motion to dismiss the original complaint.  The plaintiffs may seek to amend their First Amended Complaint to add an additional plaintiff, but any such amendment would be premised on the same core facts and causes of action.  Plaintiffs request leave through August 31, 2019 to file that amended pleading.  Plaintiffs may also seek to further amend based on facts learned through discovery.  Cloudflare opposes any amendment by Plaintiffs.  Cloudflare may amend its answer without leave of court within 21 days of filing the answer.

**6. EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI"), are aware of their document preservation obligations, and have taken reasonable and proportionate steps to preserve evidence potentially relevant to the issues reasonably evident in this action.

## 7. DISCLOSURES

Cloudflare complied with the initial disclosure requirements of Fed. R. Civ. P. 26 on July 2, 2019, and Plaintiffs complied on July 24, 2019, as required in the Court's scheduling order. Dkt. No. 42.

In its initial disclosures on July 2, 2019, Cloudflare has identified Justin Paine, Albert Lee Guinn III, and Chris Merritt as individuals likely to have discoverable information. It will identify: the pleadings; documents describing Cloudflare's technology, network, system, and services; Cloudflare's terms of service and abuse policy; documents reflecting the function and operation of Cloudflare's abuse complaint process and policy; the plaintiffs' allegations of copyright infringement and communications about the same; documents reflecting the plaintiffs' use of Cloudflare's services; documents identifying the customers associated with, and location of, the domains listed in the Amended Complaint; and documents relating to and supporting Cloudflare's affirmative defenses as relevant documents (including ESI) that Cloudflare will use to support defenses.

In its initial disclosures, Mon Cheri Bridals and Maggie Sottero Designs have identified Stephen Lang, Jon Liney, Cynthia Horne, Armen Petrossian, Thomas Manning, Clyde Redford, Hilary Taylor and Kylie Smith as individuals likely to have discoverable information. They will identify Plaintiffs' copyright registrations; documents reflecting ownership of copyrights; documents reflecting direct infringement of those copyrights; documents reflecting the investigation of Cloudflare's infringement; and documents reflecting communications with, and notices provided to, Cloudflare as relevant documents Plaintiffs may use to support their claims.

## 8. DISCOVERY

The parties agree that the default discovery limitations are appropriate in this case.

### a. Plaintiffs' Position

Mon Cheri Bridals and Maggie Sottero Designs currently anticipate no limitations or modifications to discovery rules and currently see no discovery disputes, *except* that plaintiffs

may seek leave of the Court pursuant to Fed.R.Civ.P. 30(a)(2)(A)(i) to exceed the 10-deposition limit.

### b. Cloudflare's Position

Cloudflare anticipates no limitations or modifications to discovery rules and currently sees no discovery disputes. It does not believe that any change in the presumptive limit on the number of depositions is appropriate.

## 9. CLASS ACTIONS

This is not a class action.

## 10. RELATED CASES

There are no related cases in this matter.

## 11. RELIEF

### a. Plaintiff's Position

Mon Cheri Bridals and Maggie Sottero Designs seek actual damages, statutory damages, permanent injunctive relief, attorneys' fees and full costs under the Copyright Act.

### b. Cloudflare's Position

Cloudflare anticipates seeking attorney's fees and full costs.

## 12. SETTLEMENT AND ADR

The parties agree that an early neutral evaluation would be useful so long as the evaluator has expertise in copyright infringement including claims for direct and secondary liability.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to a magistrate judge.

## 14. OTHER REFERENCES

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15. NARROWING OF ISSUES

The plaintiffs are not prepared to stipulate to any facts at this early stage of the lawsuit.

## 16. EXPEDITED TRIAL PROCEDURE

No expedited trial is appropriate in this case.

## 17. SCHEDULING

The parties propose the following schedule:

| Event | Deadline or Date |
| --- | --- |
| Initial ADR Session | October 29, 2019 |
| Designation of Experts and Opening Reports | April 1, 2020 |
| Rebuttal Expert Disclosure and Reports | May 1, 2020 |
| Further Case Management Conference | May 20, 2020 |
| Discovery Cutoff | June 18, 2020 |
| Dispositive Motions: Plaintiffs' opening brief | August 3, 2020 |
| Dispositive Motions: Cloudflare's opening/opposition brief | August 17, 2020 |
| Dispositive Motions: Plaintiffs' opposition/reply brief | August 31, 2020 |
| Dispositive Motions: Cloudflare's reply brief | September 9, 2020 |
| Hearing on Dispositive Motions | September 24, 2020 |
| Pretrial Conference | January 4, 2021 |
| Trial | January 18, 2021 |

## 18. TRIAL

Plaintiffs and Cloudflare request a jury trial. The parties anticipate the trial to require 70 hours.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Mon Cheri Bridals and Maggie Sottero Designs filed its Certification and Notice of Interested Parties on November 7, 2018. Dkt. No. 2.  They identified the American Bridal & Prom Industry Association, Inc. as a trade industry association of which plaintiffs are members and Stephen Lang as the CEO and majority owner of Mon Cheri Bridals LLC.

Cloudflare filed its Certification and Notice of Interested Parties on December 26, 2018.  Dkt. 21.  Cloudflare identified its insurance provider as Indian Harbor Insurance Company / AXA XL.

**20. PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. OTHER**

The parties do not seek to raise other issues at this time.

Dated:  July 24, 2019

*/s/ Craig S. Hilliard*
Craig S. Hilliard (Admitted *Pro Hac Vice*)

Counsel for Plaintiffs MON CHERI BRIDALS, LLC and MAGGIE SOTTERO DESIGNS, LLC

Dated:  July 24, 2019

*/s/ Andrew P. Bridges*
Andrew P. Bridges

Counsel for Defendant CLOUDFLARE, INC.

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

UNITED STATES DISTRICT JUDGE