ROBERT B. OWENS (Bar No. 77671)
rowens@ogrlaw.com
OWENS & GACH RAY
269 S. Beverly Drive, #1074
Beverly Hills, CA 90212
Telephone: (310) 553-6611
Facsimile: (310) 954-9191

CRAIG S. HILLIARD (*Pro Hac Vice*)
chilliard@stark-stark.com
GENE MARKIN (*Pro Hac Vice*)
gmarkin@stark-stark.com
STARK & STARK, P.C.
993 Lenox Drive, Bldg. Two
Lawrenceville, NJ 08648
Telephone: (609) 895-7346
Facsimile: (609) 895-7395

Attorneys for Plaintiffs

MON CHERI BRIDALS, LLC and
MAGGIE SOTTERO DESIGNS, LLC

ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
CRYSTAL NWANERI (CSB No. 318955)
cnwaneri@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant

CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| MON CHERI BRIDALS, LLC and MAGGIE SOTTERO DESIGNS, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CLOUDFLARE, INC., and DOES 1 – 500, Inclusive,<br><br>　　　　Defendants. | Case No.: 19-cv-01356-VC-TSH<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE** |

The Parties seek the Court's assistance in resolving discovery disputes arising over Plaintiffs Mon Cheri Bridals, LLC and Maggie Sottero Designs, LLC's ("Plaintiffs") and Defendant Cloudflare, Inc.'s ("Cloudflare") production of documents. Pursuant to the Discovery Standing Order for Magistrate Judge Thomas Hixson, the parties submit the enclosed joint letter brief. The undersigned attests that counsel for the parties met and conferred by telephone several times, most recently on January 22, 2021, in a good faith attempt to resolve the issues Cloudflare raises before filing this joint statement. The parties were ultimately unable to reach agreement. Cloudflare contends that the parties have not met and conferred as to the relief Plaintiffs seek regarding their seventh set of production of documents for which the deadline for Cloudflare to respond has not yet passed. Plaintiffs disagree since the information sought has been part of prior discovery requests and discussed on numerous occasions as well as detailed in letter correspondence.

The undersigned attests that counsel for Plaintiffs has concurred in the filing of this joint statement.

| | |
|---|---|
| Dated: March 15, 2021 |    */s/ Andrew P. Bridges* |

Andrew P. Bridges (No. 122761)
abridges@fenwick.com
Crystal Nwaneri (No. 318955)
cnwaneri@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Jedediah Wakefield (No. 178058)
jwakefield@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
Matthew B. Becker (No. 291865)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

*Attorneys for Defendant Cloudflare, Inc.*

| | |
|---|---|
| Dated: March 15, 2021 |    */s/ Gene Markin (with permission)* |

Craig S. Hilliard (*pro hac vice*)
chilliard@stark-stark.com
Gene Markin
gmarkin@stark-stark.com
STARK & STARK, P.C.
993 Lenox Drive, Bldg. Two
Lawrenceville, NJ 08648-2389
Telephone: (310) 553-6611
Facsimile: (310) 954-9191

Robert B. Owens (No. 77671)
rowens@ocrlaw.com
OWENS & GACH RAY
10323 Santa Monica Blvd., Suite 102
Los Angeles, CA 90025
Telephone: (609) 895-7346
Facsimile: (609) 895-7395

*Attorneys for Plaintiffs Mon Cheri Bridals, LLC and Maggie Sottero Designs, LLC*

FENWICK

801 California Street
Mountain View, CA 94041

650.988.8500
fenwick.com

March 15, 2021

Magistrate Judge Thomas S. Hixson
United States District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom G
San Francisco, CA 94102

Re:   *Mon Cheri Bridals, LLC, et al. v. Cloudflare, Inc.*, Case No. 19-cv-01356-VC-TSH

Dear Magistrate Judge Hixson:

The parties respectfully submit this joint statement to request the Court's assistance in resolving the following disputes over the parties' respective production of documents.

## CLOUDFLARE'S REQUESTS

**1.   Cloudflare's Position**

   **a.   Case Background**

Cloudflare provides infrastructure support and security services that protect millions of websites around the world in virtually every industry, from banking and finance, to retail, to government, to media and entertainment, to healthcare, and to first responders. Plaintiffs are wedding and prom dress vendors who allege copyright infringement of photographs by websites that display the photographs and allegedly sell knockoff products. Instead of pursuing those websites, Plaintiffs seek windfall statutory damages from Cloudflare. Plaintiffs allege that Cloudflare's security and performance services to accused websites make it liable for contributory copyright infringement, even though Cloudflare does not host or have the ability to control or remove content on the accused websites, and does not induce any infringement.

   **b.   Plaintiffs refuse to produce documents about their financial performance that are relevant to their statutory damages claim**

Cloudflare seeks documents regarding Plaintiffs' financial performance and any effect of the alleged infringement, which is highly relevant to damages, and which Cloudflare has sought diligently for over a year. Under the guise of considering Cloudflare's requests, Plaintiffs delayed producing relevant financial documents. Now, on the eve of depositions, they refuse to provide this information, forcing Cloudflare to seek the Court's intervention.

Plaintiffs were required (but failed) to disclose their damages calculation in their July 2019 Rule 26(a)(1)(A)(iii) initial disclosures. To obtain damages-related information, Cloudflare served document requests seeking information about Plaintiffs' revenues and profits, including any revenue or profit that Plaintiffs lost because of the alleged infringements. Plaintiffs did not substantively respond. Ex. A. After discussions with counsel, Plaintiffs "invite[d] Cloudflare to narrow its requests and to specify the exact category of relevant documents being sought." Ex. B. To try to resolve the dispute, on May 5, 2020, Cloudflare served targeted requests for specific financial records. Ex. C. Then, almost one year after Plaintiffs were required to produce these documents under Rule 26, Plaintiffs announced that they had elected to pursue only statutory damages instead of actual damages, and they declared that "[n]o [financial records] will be produced." Ex. D.

Through multiple discovery letters and conferences of counsel, Cloudflare explained how the

requested information remains relevant, notwithstanding Plaintiffs' late election of statutory damages. The Copyright Act authorizes statutory damages within a broad range that a trier of fact "considers just." 17 U.S.C. § 504(c) (ranging from $200 to $150,000 per work). But the Act "does not provide guidelines in determining an award that would be considered just"; the court must thus consider factors, such as the plaintiff's lost revenues, "to inform its discretion." *Broad. Music, Inc. v. Shabby Inc.*, No. 05-cv-4658 BZ, 2006 WL 8442289, at *3 (N.D. Cal. Apr. 27, 2006), *adopted* No. 05-cv-04658 CRB, 2006 WL 8442290 (N.D. Cal. May 15, 2006); *see also Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 69 (1st Cir. 2013). "Courts should ensure that statutory damages awards . . . bear a plausible relationship to Plaintiff's actual damages" because a plaintiff in a copyright infringement suit is "not entitled to a windfall." *Adobe Sys. Inc. v. Nwubah*, No. 18-cv-06063-LHK, 2020 WL 3432639, at *15 (N.D. Cal. June 23, 2020) (on default judgment) (internal quotation marks omitted) (citing *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) and *Adobe Sys., Inc. v Tilley*, No. 09-cv-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). This financial information is also relevant to Plaintiffs' failure to mitigate damages, which the fact finder may also consider in awarding statutory damages. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 677 (E.D. Va. 2015) (citations omitted) ("actions a plaintiff took to mitigate [its] damages" are a "relevant consideration in determining statutory damages under the Copyright Act"), *rev'd on other grounds*, 881 F.3d 293 (4th Cir. 2018).

Plaintiffs ultimately produced an incomplete set of their annual financial statements in October 2020. But they redacted *every* line item in the statements except for their annual "sales" totals, claiming irrelevance of the redacted information. This is entirely inadequate. Cloudflare needs Plaintiffs' unredacted financial statements. The complete picture of Plaintiffs' financial performance in its annual statements is at least relevant to whether any revenue loss occurred "*as a result of the* [alleged] *infringement*" by the accused websites. *See Tenenbaum*, 719 F.3d at 69. Plaintiffs may, for example, argue they suffered overall losses because of the alleged infringement, while their profits recorded in their statements may show otherwise. Similarly, Plaintiffs' costs may evidence changes in volume of sales, otherwise obscured in the total sales number provided. Plaintiffs may disagree that the Court should consider the redacted information in its assessment of any statutory damages, but there is no support in the Federal Rules for redacting documents based on one party's unilateral view that only portions are relevant. And there is no burden on Plaintiffs in simply producing unredacted copies.

For this same reason, Cloudflare also seeks Plaintiffs' business records (such as year-end reviews or management updates) discussing the reasons for Plaintiffs' financial performance. After extensive efforts to resolve this dispute, in January 2021, Plaintiffs agreed to search for such documents. But they still have not produced any or provided any update on their search. Again, these documents are highly relevant to, at least, any purported financial effects of the alleged infringement, and to whether and how Plaintiffs mitigated damages.

These two categories of financial documents should be readily available to Plaintiffs with minimal effort. Plaintiffs already produced redacted versions of its financial statements and can claim no burden in producing the unredacted versions. As to the second category, these are records that Plaintiffs would already maintain in their course of business. Given that, and the scope of potential damages Plaintiffs seek, this discovery is proportional to the needs of the case, and Plaintiffs should be ordered to produce the documents without further delay.

    c.    **Plaintiffs refuse to produce or log their internal documents about Cloudflare or this litigation**

Cloudflare also seeks Plaintiffs' internal documents or communications about Cloudflare or

this litigation, responsive to, for example, requests for production numbers 25 through 28 that Cloudflare served in February 2020.  Ex. E.  After several conferences of counsel, Plaintiffs now claim that all of their responsive documents are privileged.  They have refused, however, to provide a privilege log containing the information required by Rule 26(b)(5)(A) for Cloudflare to evaluate that claim.  In response to their claim of undue burden in creating a privilege log, Cloudflare agreed that Plaintiffs need only log documents withheld on privilege grounds from before Plaintiffs filed this lawsuit.  Still, Plaintiffs implausibly claim several thousand privileged documents without giving Cloudflare any information to review and challenge Plaintiffs' broad assertion of privilege.  Plaintiffs have had ample time to provide this information.  Cloudflare thus asks the Court to order Plaintiffs to produce their responsive documents or to provide a privilege log immediately.

2.      **Plaintiffs' Position**

Plaintiffs are seeking *statutory* damages for Cloudflare's contributory copyright infringement arising out of Cloudflare continuing to provide website optimization and caching services to website clients Cloudflare knows or should know are infringing on Plaintiffs' copyrighted images.  By continuing to provide services to clients repeatedly accused of infringement, including caching infringing images on its servers resulting in the infringing content being delivered to unwary Internet users faster, Cloudflare materially contributes to its clients' rampant infringement.

      a.      **Plaintiffs' Financials Are Irrelevant**

In response to Cloudflare's Notice to Produce Plaintiffs' financials reflecting Plaintiffs' profits, losses, and revenues from 2008 through the present, Plaintiffs objected and notified Cloudflare of their election to pursue statutory damages.  During subsequent discussions and correspondence, Plaintiffs explained that unlike a typical copyright infringement plaintiff who derives a direct economic benefit from the sale of its copyrighted works (i.e., musical compositions, movies, literary works, paintings, etc.), the dress manufacturer Plaintiffs in this case do not sell the copyrighted images at issue.  Rather, Plaintiffs use the copyrighted images to advertise and promote their dresses and collections to retailers and consumers.  Plaintiffs do not receive any direct revenue from licensing or using their protected images because all their authorized retailers are granted a non-exclusive license to use the images as part of the authorized retailer designation.

Although some courts have noted that statutory damages should bear some relation to the plaintiff's actual damages, *see Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 670 F. Supp. 1133, 1140 (E.D.N.Y. 1987), Cloudflare is not entitled to unfettered discovery into Plaintiffs' financial affairs.

The Copyright Act provides that "an infringer of copyright is liable for either -- (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. 504(a).  Subsection (c) of the Act allows a copyright owner to seek "an award of statutory damages for all infringements involved in the action" instead of actual damages.

Here, Plaintiffs have elected to seek statutory damages rather than actual damages for their copyright infringement claims.  A district court has wide discretion in assessing statutory damages. To determine the amount of statutory damages, courts consider such factors as "the expenses saved and the profits reaped" and "the revenues lost by the plaintiff". *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1235, 1237 (E.D. Cal. 2008).  Notably, the factors include the profits reaped by defendant and the revenues lost by plaintiff, not the plaintiff's profits. *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 926, 927-28 (N.D. Cal. 2009); *see also* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161 ("the plaintiff in an

infringement suit is not obliged to submit proof of damages and profits and may choose to rely on the provision for minimum statutory damages").

Plaintiffs and other clothing manufacturers are affected by counterfeiting, generally; however, without knowing exactly how many counterfeit dresses the infringing website defendants have sold, it is extremely difficult to estimate Plaintiffs' lost revenues, and as such, Plaintiffs' annual financial statements and records, which concern the sales of all of Plaintiffs' SKUs to retailers, including many that are not the subject of any of the copyrighted images at issue here, will not provide any relevant information.

Nevertheless, in an effort to compromise on the issue, Plaintiffs agreed to produce certain financial information which shows Plaintiffs' total revenues. Despite Plaintiffs' concession and production of its sales figures, Cloudflare persisted in requesting additional financial information. Plaintiffs have resisted this request because Plaintiffs are not seeking any actual damages and have not claimed any discrete financial harm from the alleged infringement activities (aside from the general effects of counterfeiting). Since Plaintiffs have not claimed any specific actual damages, there was nothing to mitigate. Plaintiffs' profits and financial affairs simply have no bearing on any facts or issues in dispute nor contain any probative value for purposes of determining statutory damages. Rather, the pertinent inquiry will revolve around the costs typically incurred by Plaintiffs in developing their copyrighted images (which information has been produced in discovery), Cloudflare's conduct and cooperation, and potential for discouraging future infringement. *See Microsoft Corp.*, 549 F. Supp. 2d at 1237.

      **b.** **Cloudflare's Request for Attorney-Client Privileged Communications Containing the Word "Cloudflare" Is Disproportional to the Needs of the Case and Unduly Burdensome**

In response to Cloudflare's overly broad and unduly burdensome discovery requests, Plaintiffs properly objected. *See* Exh. F (Plaintiffs' Responses to Cloudflare's First Set of Document Requests). Thereafter, Counsel engaged in numerous discussions and correspondence in an effort to narrow the requests. *See* Exh. G (Markin Letter to Becker dated March 25, 2020). Even though Plaintiffs produced non-privileged communications and correspondence responsive to Cloudflare's document requests, Cloudflare persisted in requesting privileged correspondence containing the word "Cloudflare". In response to Cloudflare's request to identify the universe of responsive privileged communications prior to the filing of the Complaint, Plaintiffs' counsel searched its email archives and identified thousands of potentially responsive documents. See Exh. H (Markin Letter to Mehta dated February 11, 2021). These privileged emails between counsel and Plaintiffs discuss the filing of a complaint, financial arrangements, infringement investigations, evaluation of legal claims, litigation strategy, and proposed timelines. As Plaintiffs indicated, cataloguing thousands of privileged emails is incredibly burdensome and not proportional to the needs of the case. None of the privileged communications between counsel and Plaintiffs can conceivably bear upon any issues or facts in dispute. This case concerns copyright infringement and Cloudflare's entitlement, or lack thereof, to certain DMCA safe harbors. Plaintiffs' email communications with counsel discussing the nature of the case, investigating infringement, and determining litigation strategy are completely irrelevant. As such, Plaintiffs have resisted production – but suggested they are willing to further meet and confer to narrow the scope of the inquiry by adding search terms. Cloudflare has refused.

## PLAINTIFFS' REQUEST

    **c.**    **Plaintiffs' Position:  Cloudflare's Deficient Discovery Responses**

    More than a year ago, Plaintiffs requested Cloudflare produce documents identifying the owners of its website clients accused of infringing Plaintiffs' copyrighted images, written agreements and contracts with those clients, correspondence with the website clients concerning Plaintiffs' copyright infringement notices, and documents illustrating how Cloudflare has implemented its repeat infringer policy.  *See* Exh. I (Cloudflare's Responses to Plaintiffs' First Notice to Produce to Cloudflare).  Thereafter, Plaintiffs sought documents reflecting any actions Cloudflare took in response to infringement notices and any investigations undertaken to investigate infringement by its clients.  *See* Exh. J (Cloudflare's Responses to Plaintiffs' Second Notice to Produce to Cloudflare).  Plaintiffs also sought documents to show what services Cloudflare provided to the infringing websites and the DNS settings used by those websites.  *See* Exh. K (Cloudflare's Responses to Plaintiffs' Third Notice to Produce to Cloudflare).  And most recently, after narrowing down the list of infringing website clients at issue, Plaintiffs again requested documentation pertaining to those specific websites.  *See* Exh. L (Cloudflare's Responses to Plaintiffs' Sixth Notice to Produce to Cloudflare) & Exh. M (Plaintiffs' Seventh Notice to Produce to Cloudflare).  Cloudflare has refused to meaningfully respond to these requests or to otherwise identify responsive documents it has produced.

    Despite agreeing to produce responsive documents and in fact producing over 94,000 scattered and uncategorized documents, Cloudflare has failed and refused to identify specific categories of documents responsive to Plaintiffs' pointed requests.  *See City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 584-85 (C.D. Cal. 2011) ("Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents" and "[a] producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect.").  Moreover, even though Cloudflare has produced a spreadsheet purporting to contain responsive information, Cloudflare has neither supplemented the spreadsheet with additional information as requested nor answered Plaintiffs' inquiries about apparent discrepancies, incomplete sections, missing information, and undefined terms.

    As such, Plaintiffs respectfully request the Court order Cloudflare to identify responsive documents by bates-number as it relates to each request contained in Plaintiffs' Seventh Notice to Produce.

    **d.**    **Cloudflare's Position:  Plaintiffs' Manufactured Dispute Lacks Merit**

    Plaintiffs added this dispute to a joint letter less than two hours before the planned filing without previous discussion between the parties on their demand.  Notably, Plaintiffs identify no documents or information that they seek to compel.  Instead, they concede that Cloudflare has, in fact, produced *thousands* of documents responsive to Plaintiffs' requests for production, including those they reference in this letter.  Cloudflare produced its documents as it keeps them in its ordinary course of business, as Federal Rule of Civil Procedure 34 permits.  Hoping to shortcut their review of documents they requested, Plaintiffs recently (on February 11, 2021) served requests that are duplicative of earlier requests to which Cloudflare had already responded, repeating requests for *exact* categories of documents, but this time asking that Cloudflare also identify (as in an interrogatory) already-produced documents by Bates number.  Nothing in Rule 34 requires what Plaintiffs demand and the relief they seek.  Fed. R. Civ. P. 34(b)(2)(B).  Cloudflare produced responsive documents and there is no cognizable dispute.