UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MON CHERI BRIDALS, LLC, et al.,<br>Plaintiffs,<br>v.<br>CLOUDFLARE, INC., et al.,<br>Defendants. | Case No. 19-cv-01356-VC  (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 98, 102, 103 |

We are here on cross-motions to compel brought by Plaintiffs Mon Cheri Bridals, LLC, et al., and Defendant Cloudflare, Inc. ECF Nos. 98, 102, 103. The Court held a hearing on March 30, 2021, and this order follows.

**A.  Cloudflare's Discovery of Mon Cheri's Profits**

Plaintiffs produced annual financial statements in October 2020, but they redacted every line item in the statements except for their annual sales totals. Thus, for example, all information relating to costs and profits was redacted. Cloudflare asks for this information to be unredacted, and for financial statements from Mon Cheri for 2018 and 2019. Cloudflare also seeks business records (such as year-end reviews or management updates) discussing the reasons for Plaintiffs' financial performance. Plaintiffs oppose these requests.

The issue that divides the parties is whether any of Plaintiffs' financial information other than Plaintiffs' revenues is relevant to this case, in which Plaintiffs seek statutory damages for copyright infringement but do not seek actual damages. By way of background, 17 U.S.C. § 504(c)(1) states that a court may award statutory damages per infringed work "of not less than $750 or more than $30,000, as the court considers just." If the infringer proves the infringement was innocent, the minimum drops to $200, and if the copyright owner proves it was willful, the

cap becomes $150,000. *Id*. §(c)(2). "The statute does not provide guidelines in determining an award that would be considered just," *Broadcast Music, Inc. v. Shabby Inc*., 2006 WL 8442289, *3 (N.D. Cal. Apr. 27, 2006), *adopted* 2006 WL 8442290.

Under the case law, "[i]n determining an appropriate award of statutory damages, courts have considered factors such as: (1) 'the expenses saved and the profits reaped;' (2) 'the revenues lost by the plaintiff;' (3) 'the value of the copyright;' (4) 'the deterrent effect on others besides the defendant;' (5) 'whether the defendant's conduct was innocent or willful;' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;' and (7) 'the potential for discouraging the defendant.'" *Id*. at *3; *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. Apr. 17, 2008) (listing the same seven factors).

In addition, "[c]ourts should ensure that statutory damages awards . . . 'bear[] a 'plausible relationship to Plaintiff's actual damages.'" *Adobe Systems Inc. v. Nwubah*, 2020 WL 3432639, *15 (N.D. Cal. June 23, 2020) (default judgment case) (quoting *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. Jan. 19, 2010)); *see also BMG Rights Mgmt. LLC v. Cox Communications, Inc*., 149 F. Supp. 3d 634, 677 (E.D. Va. 2015) ("A plaintiff's actual damages are a relevant consideration in determining statutory damages under the Copyright Act."), *rev'd on other grounds*, 881 F.3d 293 (4th Cir. 2018); *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc*., 670 F. Supp. 1133, 1140 (E.D.N.Y. 1987) ("Undoubtedly these [statutory] damages should bear some relation to the actual damages suffered").

Plaintiffs rely on the cases that list the seven factors used in determining statutory damages, which include defendants' profits and plaintiff's lost revenues (but not plaintiff's lost profits) to argue that their lost profits are irrelevant. Cloudflare relies on the cases stating that statutory damages awards should bear some relationship to actual damages to argue that Plaintiffs' profits are relevant because lost profits (not lost revenue) are a measure of actual damages. It must be acknowledged that decisions in this district are in tension with each other on this point. On the one hand, there is a line of decisions holding that statutory damages on default judgment should bear a plausible relationship to the plaintiff's actual damages. *See Adobe Systems*, 2020 WL

2

1   3432639, *15 (quoting *Yelp Inc.*, 70 F. Supp. 3d at 1102, in turn citing a series of cases involving
2   Adobe and Microsoft).  The overriding concern in these cases is that "[w]hile a plaintiff in a
3   trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is
4   not entitled to a windfall."  *Yelp*, 70 F. Supp. 3d at 1102.  On the other hand, there is *Apple Inc. v.*
5   *Psystar*, 673 F. Supp. 2d 926 (N.D. Cal. 2009).  In that case, the court recited the normal seven
6   factors to be considered in determining statutory damages, which do not include consideration of
7   plaintiff's profits, and then relied heavily on *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983 (E.D.
8   Pa. 1986).  The court explained that "the *Bly* court pointed to the legislative history, which stated
9   'the plaintiff in an infringement suit is not obliged to submit proof of damages and profits and may
10  choose to rely on the provision for minimum statutory damages.'  Likewise, Apple is not obliged
11  to provide proof of its own profits when it has elected to seek statutory damages."  *Id*. at 928-29
12  (citations omitted).  The court explained that "Psystar has not demonstrated that evidence of
13  Apple's profit margins is required for Apple to seek statutory damages for its copyright
14  infringement claim," and on that basis denied Psystar's motion to compel Apple to produce its
15  profit information.  This would leave Apple's actual damages unknown, *see Fitzgerald*, 670 F.
16  Supp. at 1138 ("The primary measure for the recovery of actual damages under 17 U.S.C. §
17  504(b) is the extent to which the market value of the copyrighted work at the time of infringement
18  has been harmed or destroyed by the infringement.  The best method available for measuring this
19  diminution in market value is the profit lost by the plaintiff due to the infringements.") (citations
20  omitted), so there would be no way to compare them to the claimed statutory damages.

21        This Court agrees with *Psystar* that a copyright plaintiff seeking only statutory damages is
22  not required to introduce evidence of its lost profits.  However, the question presented by this
23  motion to compel is whether the defendant can obtain evidence that there were no lost profits to
24  argue that the high statutory damages the plaintiff seeks amount to a windfall.  The default
25  judgment cases indicate the answer should be yes.  And there is nothing about the nature of a
26  default judgment proceeding that limits concerns about windfall damages to that context because
27  avoiding windfall damages is also important in litigated cases.  The Court observes that the
28  legislative history cited in *Bly* stated that "the plaintiff in an infringement suit is not obliged to

submit proof of damages and profits and may choose to rely on the provision for *minimum* statutory damages." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161 (emphasis added). And *Bly* repeated that statement: "Moreover, the legislative history of the Copyrights Act, while not entirely clear on this point, seems to contemplate that when a plaintiff does not establish that any damage has resulted from an infringement, the *minimum* amount of $250 will be awarded." 638 F. Supp. at 987-88 (emphasis added). That holding does seem to harmonize the case law. Where a plaintiff seeks only the minimum statutory damages, there is no possibility of a windfall, and the plaintiff's lost profits are irrelevant. By contrast, if a plaintiff seeks more than the minimum in statutory damages, then its lost profits become relevant. And that is indeed the factual scenario in the default judgment cases cited above – the plaintiffs were seeking more than the minimum statutory damages.

Here, Plaintiffs are not required to – and apparently do not intend to – submit evidence of lost profits in order to seek statutory damages. However, if Plaintiffs argue for any statutory damages higher than the minimum under section 504(c), Cloudflare is entitled to present evidence that Plaintiffs did not suffer any lost profits to argue that Plaintiffs are seeking a windfall. If Plaintiffs stipulated that they were seeking *only the minimum* level of statutory damages per infringed work, the Court would agree that their lost profits are irrelevant. But Plaintiffs have only stated generally that they are seeking statutory damages instead of actual damages, and they have not committed to seeking only minimum statutory damages. Given this situation, the case law holding that statutory damages should bear some kind of relationship to actual damages makes Plaintiffs' profit information (and the reasons for the profits) relevant evidence that Cloudflare may seek in discovery.

Plaintiffs also argue that their profits are irrelevant because unlike a typical copyright plaintiff that derives a direct economic benefit from the sale of its copyrighted works (such as songs, books, or movies), the dress manufacturer Plaintiffs in this case do not sell the copyrighted images at issue. Rather, Plaintiffs use the copyrighted images to advertise and promote their dresses and collections to retailers and consumers. Plaintiffs say they do not receive any direct revenue from licensing or using their protected images because all of their authorized retailers are

4

granted a non-exclusive license to use the images as part of the authorized retailer designation. However, that argument does not move the needle. Defendants can still argue (if the produced information shows this to be true) that there was no economic impact of the alleged infringement on Plaintiffs, and so awarding high statutory damages would be an undeserved windfall.

Accordingly, the Court grants Cloudflare's motion to compel with respect to Plaintiffs' financial information.

**B.        Plaintiffs' Documents and Communications Discussing Cloudflare or this Lawsuit**

Cloudflare served RFPs 25-28, which ask for:

> 25. All Documents Concerning communications by or with Counterfeit Technology Concerning Cloudflare.
>
> 26. All Documents (including Documents Concerning communications by any Person) Concerning Cloudflare.
>
> 27. All Documents Concerning communications by any Person Concerning this lawsuit.
>
> 28. All Documents Concerning communications by any Person Concerning other lawsuits, or potential lawsuits, against Cloudflare.

Plaintiffs said all of the requested documents are privileged, but they declined to provide a privilege log, citing undue burden. As a proposed compromise, Cloudflare agreed Plaintiffs could decline to log documents that postdate the filing of this lawsuit. However, Plaintiffs still claim they have several hundred documents that pre-date the filing of this lawsuit and that they are all privileged communications with outside counsel retained to represent them in this litigation. Cloudflare moves to compel the production of a privilege log for the pre-complaint documents, and Plaintiffs oppose.

"[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009). "[A] rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship . . . Courts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation." *In re Snap Inc. Sec. Litig.*, 2018 WL

5

7501294, at *1 (C.D. Cal. Nov. 29, 2018) (internal quotation marks and citations omitted). Additionally, Courts in this circuit have held that "correspondence generated prior to the filing of [an] action, but in direct connection with preparation for the litigation need not be logged." *iSmart Intern. Ltd. v. I-DocSecure, LLC*, 2006 WL 2263910, at *3 (N.D. Cal. Aug. 8, 2006) (emphasis omitted). In another case from this District, the court held that: "privileged communications between any attorneys (including all support staff and vendors) and party clients that are related to this litigation or attorney work product, regardless of the date made or created need not be included on the parties' privilege logs." *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2010 WL 3629830, at *6 (N.D. Cal. Sept. 14, 2010).

In light of this case law, the Court declines to order Plaintiffs to log their communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed. Please also bear in mind what these RFPs ask for: RFPs 25 and 26 ask for documents and communications "concerning Cloudflare"; RFP 27 asks for documents "concerning this lawsuit"; and RFP 28 asks for documents "concerning other lawsuits, or potential lawsuits, against Cloudflare." Documents responsive to these RFPs *and* that are also communications with outside counsel retained for this lawsuit are so overwhelmingly likely to be privileged and work product that requiring Plaintiffs to log them all is a pointless waste of time. This part of Cloudflare's motion to compel is denied.

**C.   Plaintiffs' Requests for Admission to Cloudflare**

Plaintiffs move to compel responses to RFAs 54-69. They ask:

> RFA 54: For any period or duration between January 1, 2015 and February 5, 2021, admit Cloudflare provided services for or to each of the domains/websites listed in the attached Exhibit A.
>
> RFA 55: For any period or duration between January 1, 2015 and February 5, 2021, admit Cloudflare provided caching services for or to each of the domains/websites listed in the attached Exhibit A.
>
> RFA 56: For any period or duration between January 1, 2015 and February 5, 2021, admit that on at least one occasion Cloudflare temporarily stored static content from a domain/website listed in the attached Exhibit A on Cloudflare servers at data centers in the United States
>
> RFA 57: Admit that prior to January 1, 2015, Cloudflare had received

6

at least one notice accusing a domain/website listed in the attached Exhibit A of infringing on another's copyright.

RFA 58: Admit that prior to January 1, 2015, Cloudflare had received at least one notice accusing the owner of any domain/website listed in the attached Exhibit A of infringing on another's copyright

RFA 59: Admit that since January 1, 2015, Cloudflare has received at least one notice from Counterfeit Technology concerning alleged infringement of one or more of Plaintiffs' copyrighted works by a domain/website listed in the attached Exhibit A.

RFA 60: Admit that since January 1, 2015, Cloudflare has received at least one notice from a third party (not Counterfeit Technology) concerning alleged copyright infringement by a domain/website listed in the attached Exhibit A.

RFA 61: Admit that since January 1, 2015, Cloudflare has received at least one notice from a third party (not Counterfeit Technology) concerning alleged copyright infringement by an owner of a domain/website listed in the attached Exhibit A

RFA 62: Admit that since receiving the first notice from Counterfeit Technology concerning alleged infringement of one or more of Plaintiffs' copyrighted works by a domain/website listed in the attached Exhibit A, Cloudflare has not terminated any services to that domain/website.

RFA 63: Admit that since receiving the first notice from Counterfeit Technology concerning alleged infringement of one or more of Plaintiffs' copyrighted works by a domain/website listed in the attached Exhibit A, Cloudflare has continued to provide caching services to that domain/website

RFA 64: Admit that since receiving the first notice from Counterfeit Technology concerning alleged infringement of one or more of Plaintiffs' copyrighted works by a domain/website listed in the attached Exhibit A, static content from that domain/website was, on at least one occasion, temporarily stored on Cloudflare servers at data centers in the United States.

RFA 65: Admit that Cloudflare has not investigated complaints of infringement concerning or about any of the domains/websites listed in the attached Exhibit A.

RFA 66: Admit that Cloudflare has not taken any disciplinary action against any of the domains/websites listed in the attached Exhibit A after receiving any complaints or notices of infringement regarding that domain/website.

RFA 67: Admit that after receiving an infringement notice from Counterfeit Technology concerning or about a domain/website listed in the attached Exhibit A, Cloudflare took no disciplinary action against that domain/website, the owner of that domain/website, or the Cloudflare customer who owns or manages that domain/website.

> RFA 68: Admit that Cloudflare required the client owner of any domain/website listed in the attached Exhibit A to name a Cloudflare nameserver as the authoritative/controlling nameserver for that domain/website.
>
> RFA 69: Admit that after receiving an infringement notice from Counterfeit Technology concerning or about any domain/website listed in the attached Exhibit A, Cloudflare continued to provide DNS and CDN services to/for that domain/website.

There were 142 websites listed in Exhibit A, but during meet and confer the parties negotiated it down to 109 websites. Each RFA also states: "To the extent Your answer differs depending on the domain/website, please identify by number or name those domains/websites for which you would admit this request and those for which you would deny it." With the exception of RFA 65, all of Cloudflare's existing responses are evasive and nonresponsive. In addition, other than the response to RFA 65, none of them answer any of the RFAs for each of the 109 websites. Cloudflare opposes the motion to compel, primarily citing burden.

The Court grants the motion to compel, aside from RFA 65.[1] It is true that if you multiply the 15 RFAs (other than RFA 65) by the 109 websites, this discovery seeks 1,635 pieces of information. But that's not the right way to measure burden. Most of this information can be obtained from databases and records that should be easily accessible to Cloudflare. RFAs 54 and 55 require Cloudflare to know if any of the 109 websites were its customers during a particular period of time and what services Cloudflare provided to them. That information should be easily found in centrally maintained records. For RFA 56 (admit you cached at least one piece of content for each website in the last six years), if that information cannot be ascertained from some readily accessible database or set of records, Cloudflare can say it doesn't know. For RFAs 57-61, Cloudflare probably tracks notices like that. RFAs 62, 63 and 69 just require a comparison of the dates of the notices with the time periods in which Cloudflare provided services to those

---

[1] In response to RFA 65, Cloudflare states: "Cloudflare denies the request on the basis that Cloudflare locates and provides information to facilitate investigation *but admits that Cloudflare is not in a position to and does not investigate the merits of accusations of infringement*. Cloudflare denies the remainder of the request." (emphasis added). The italicized portion answered the RFA, and because the answer was stated as a general business practice, Cloudflare doesn't need to state it separately for each website. The language before the italicized portion is not responsive but isn't improper either because it clarifies that Cloudflare facilitates investigations that it does not conduct itself.

8

customers.  RFA 64 seems similar to RFA 56.  For RFAs 66 and 67, it should not be difficult for Cloudflare to know what if any actions it took in response to those complaints or notices; that information is surely tracked somewhere, if Cloudflare does anything to respond to such notices.  And RFA 68 sounds like it asks about a general policy and the answer may be the same for every customer.

These RFAs do ask for a lot of little pieces of information, but (with the possible exception of RFAs 56 and 64), it all seems like the kind of information that is likely to be tracked in records and databases.  And if the Court is wrong, and some of these RFAs ask for information the company does not track, Cloudflare can say it doesn't know the answer.  Some of these RFAs have value to the Plaintiffs even if the answer is that Cloudflare doesn't know.  For example, if Cloudflare says it doesn't know the answer to RFAs 57-61 as to all 109 websites, that would amount to an admission that it does not track complaints about copyright infringement, and Plaintiffs could use that in support of their case.  Also, in light of Cloudflare's existing answer to RFA 65, the Court wonders if there is any burden at all in responding to RFAs 66 and 67 other than identifying whether Cloudflare received an infringement notice for each website.  Likewise, once Cloudflare has answered RFAs 54 and 55, the Court is skeptical that there is any additional burden in answering RFA 68.

Cloudflare argues that it has produced documents from which this information can be gleaned, and that is sufficient.  However, that cannot possibly be true because Plaintiffs are in part taking discovery into what Cloudflare did *not* do.  Actions that Cloudflare did not take are not likely to be reflected in documents.  Also, even for RFAs (such as 54) where documentary evidence might help provide an answer, Rule 36 does not allow a responding party to point to documents in the way that Rule 33 does for interrogatories.  The purpose of an RFA is to remove an item from dispute, so that the propounding party doesn't need to use documents to prove something at trial.  An admission or denial as to all 109 websites for RFA 54 promotes the "just, speedy, and inexpensive determination" of this action in a way that admitting 109 trial exhibits does not.  Cloudflare alternatively argues that Plaintiffs should be required to develop this evidence in depositions.  However, the Court does not believe that is practical.  Fundamentally,

9

the Court does not believe these RFAs are as difficult to answer as Cloudflare contends. The information sought is very likely contained in centralized databases and records. These are not the types of records for which Cloudflare would search through people's emails. And, once it has taken the effort to search its databases and records, if Cloudflare does not know what the answer is for a given RFA and website, it can say that.

Accordingly, Plaintiffs' motion to compel is granted.

**IT IS SO ORDERED.**

Dated: April 1, 2021

THOMAS S. HIXSON
United States Magistrate Judge