EXHIBIT A

Exhibit "A"

1  Robert B. Owens, Esq. (Bar No. 77671)
2  rowens@ogrlaw.com
   OWENS & GACH RAY
3  10323 Santa Monica Blvd., Suite #102
4  Los Angeles, CA 90025
   Ph: (310) 553-6611
5  Fax: (310) 954-9191
6
7  Craig S. Hilliard, Esq.
   chilliard@stark-stark.com
8  STARK & STARK, P.C.
9  993 Lenox Drive, Bldg. Two
   Lawrenceville, NJ 08648
10 Ph: (609) 895-7346
11 Fax: (609) 895-7395
12 (PRO HAC VICE APPLICATION TO BE FILED)

13 *Attorneys for Plaintiffs*
14 *Mon Cheri Bridals, LLC and*
   *Maggie Sottero Designs, LLC*
15

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MON CHERI BRIDALS, LLC and MAGGIE SOTTERO DESIGNS, LLC, | ) Case No. ) ) |
| Plaintiffs, | ) **COMPLAINT FOR CONTRIBUTORY** ) **COPYRIGHT INFRINGEMENT** ) |
| vs. | ) [Demand for Jury Trial] ) |
| CLOUDFLARE, INC., a Delaware corporation; and DOES 1-10, Inclusive, | ) ) ) |
| Defendants. | ) ) ) |

1

**COMPLAINT FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

Plaintiffs, Mon Cheri Bridals, LLC and Maggie Sottero Designs, LLC (collectively "Plaintiffs") as and for their Complaint against defendant, Cloudflare, Inc., and Does 1-10 inclusive, allege the following:

## JURISDICTION AND VENUE

1. This is an action seeking damages and equitable relief for contributory copyright infringement. CloudFlare, Inc. is an Internet service provider which is liable for the infringements committed by third-party content providers who have infringed, and are continuing to infringe, the copyrights owned by Plaintiffs in certain images of dress designs. CloudFlare's liability arises from its failure to terminate the providing of its content delivery services to customers it knows, or has reason to know, is using those services to infringe on Plaintiffs' copyrights. Plaintiffs have filed hundreds of "takedown notices" with CloudFlare, consistent with the Digital Millenium Copyright Act (DMCA), but CloudFlare has failed and/or refused to respond to those notices by terminating its services to infringers. As such, CloudFlare is liable for the infringements committed by its customers.

2. The Court has jurisdiction over this action because it arises under the Copyright Act, 28 U.S.C. § 1338(a).

3. Venue is proper in this District because the Defendant may be found in this District, 28 U.S.C. § 1400(a).

## PARTIES

4. Plaintiff, Mon Cheri Bridals, LLC ("Mon Cheri") is a Delaware limited liability company which maintains its principal place of business at 1018 Whitehead Road Ext., Trenton, New Jersey 08638.

5. Plaintiff, Maggie Sottero Designs, LLC ("Maggie Sottero") is a Utah limited liability company which maintains its principal place of business at 2300 South 1070 West, Salt Lake City, Utah 84119.

6. Cloudflare, Inc. ("Cloudflare") is a Delaware corporation which provides a variety of Internet services to clients, including provision of a "content delivery network"

that delivers services to hosts of internet websites, including the sites described in this Complaint.

7. Plaintiffs have no knowledge of the true names and capacities of the parties sued as Doe Defendants 1-10, inclusive, and therefore sues them using fictitious names. Plaintiffs will amend their Complaint to identify these Doe Defendants specifically if and when their true names and capacities are ascertained.

8. On information and belief, through their acts or omissions, Does 1-10 are responsible, along with Cloudflare, for the injuries alleged, and therefore are liable for them. On information and belief, at all times, Cloudflare and Does 1-10 were principals, agents, and representatives of each other, or acting in concert with one another such that the acts or omissions of any of them can be ascribed to the others.

## BACKGROUND

9. Plaintiffs are two of the largest manufacturers and wholesalers of wedding dresses and social occasion wear in the United States. Through their own creative design teams, Plaintiffs have developed many of the world's most unique and original wedding and social occasion dress patterns, and Plaintiffs own the copyrights in and to these designs.

10. Plaintiffs also own the copyrights in photographic images of those dress designs. These copyrights are registered with the U.S. Copyright Office. A summary of the registrations is attached hereto as Exhibit "A".

11. The photographic images of Plaintiffs' dress designs are the lifeblood of Plaintiffs' advertising and marketing of their dress designs to the consuming public. Plaintiffs invest hundreds of thousands of dollars each year in the development of sophisticated marketing campaigns which involve the engagement of models and photographers and the coordination of expensive photoshoots to capture the appropriate "look" of the campaign for a particular line of dresses. Plaintiffs' ability to market their unique dress designs to consumers is driven largely by the images of their dresses which appear on their websites and in other marketing materials.

**COMPLAINT FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

12. Plaintiffs, along with other members of the formalwear industry, are the victims of a massive Internet scheme to advertise and sell products using the copyrighted images of their dresses. These Internet websites, including ones serviced by Cloudflare which are the subject of this Complaint, have manufactured, imported, distributed, offered for sale and sold counterfeit goods, including bridal gowns, social occasion dresses, prom dresses and other formalwear using copyrighted images of Plaintiffs' dresses, they continue to do so to this day.

13. Counterfeiting is an illegal business that harms both consumers, who are deceived into believing they are buying genuine goods when they are actually buying counterfeits, as well as brand owners, who are deprived of sales and subject to a loss of goodwill from these low-quality counterfeits bearing their marks. The Internet has made it extraordinarily easy for counterfeiters to conceal that the goods they are selling are fake, hide their true identities and operate under multiple false names and addresses from extra-territorial locations in an attempt to avoid liability.

14. The quality formalwear products made by Plaintiffs have been the focus of a concerted, pervasive internet counterfeiting effort originating primarily in China, but whose effects are felt here in the United States. These counterfeit websites target consumers in the United States. Chinese merchants set up their websites to appear to be authorized retailers of genuine formalwear products, even though Plaintiffs' investigative team has revealed that they are selling counterfeit products and that they are based primarily in China.

15. These 'rogue' websites are written in English, accept payment in US dollars and allow payment by PayPal and/or major credit cards. The merchants often perpetuate the illusion that these websites are operated by or under the authority of legitimate manufacturers by using domain names incorporating the manufacturers' trademarks and copying their original and proprietary marketing images and designs directly from their websites. These websites also use 1-800 numbers as contact information that are only accessible from the United States.

16. When the knockoff goods are shipped from China to the United States, they are shipped as single packages and declared as "gifts" rather than commercial shipments, and they pass through U.S. ports without paying a dime in customs duties. So while legitimate businesses in the United States pay their taxes and customs duties on imported goods, illegitimate merchants in China deceive U.S. citizens and cheat the government out of customs duties.

17. Consumers are being deceived, believing they are getting 'a good deal' on genuine products rather than buying counterfeit goods. Plaintiffs and other companies in the formalwear industry have received numerous complaints from consumers who reported purchasing what they believed were genuine dresses on these types of authentic-looking websites, only to receive counterfeit dresses of vastly inferior quality. While the China-based websites all claim to be selling genuine products, nothing could be further from the truth. Plaintiffs have purchased a number of dresses from these websites, and each one received to date has been identified as counterfeit.

18. Counterfeiters are notoriously difficult to stop. Even when a brand owner challenges the sale of counterfeit goods by requesting that a particular Internet service provider remove or suspend an infringing website, the counterfeiter loses no inventory, retains all of its profits and simply moves that portion of its business to another website, or moves the website to another web host or registrar. It is so simple and inexpensive for a counterfeiter to set up a new domain and move its illegal business to a new site, that conventional efforts to address the problem are ineffectual.

19. Plaintiffs are also members of the American Bridal & Prom Industry Association, Inc. ("ABPIA"). ABPIA is a not for profit corporation organized under New Jersey law. ABPIA is organized exclusively as a business league or trade association for the formalwear industry within the meaning of Section 501(c)(6) of the Internal Revenue Code of 1986. The purposes of ABPIA are as follows:

- to take any and all appropriate and lawful action against the marketing and sale of counterfeit formalwear products;

- to educate consumers, retailers and members of the formal industry and the general public about the harm to consumers and fair competition in the formalwear industry caused by the marketing and sale of counterfeit products;

- to lobby governmental entities to aid the formalwear industry in the fight against the marketing and sale of counterfeit products; and to conduct discussions among members of the formalwear industry in the fight against the marketing and sale of counterfeit products.

20. In the last five years, ABPIA has successfully prosecuted claims against hundreds of websites who use stolen images of the dresses made by Plaintiffs and others to woo unsuspecting consumers into purchasing knockoff goods. ABPIA has secured default judgments and permanent injunctive relief in the following actions, which relief included the disabling of over 1,500 websites: *American Bridal & Prom Industry Association v. Moncherybridal.com et al,* Civil Action No. 12-7079 (FLW)(LHG), *American Bridal & Prom Industry Association v. Affordablebridaldress.com et al,* Civil Action No. 14-2311 (AET)(LHG), *American Bridal & Prom Industry Association v. Weddingshoparizona.com et al,* Civil Action No. 13-4081 (FLW)(LHG), *American Bridal & Prom Industry Association v. Chiffondressstore.com et al,* Civil Action No. 13-4347 (FLW)(LHG), *American Bridal & Prom Industry Association v. Weddingshopevansville.com et al,* Civil Action No. 13-5544 (FLW)(LHG), *American Bridal & Prom Industry Association v. Loversbridal.com et al,* Civil Action No. 14-1570 (FLW)(LHG), *American Bridal & Prom Industry Association v. 2016dressforprom.com et al,* Civil Action No. 16-8272 (AET)(LHG), *American Bridal & Prom Industry Association v. Jollyprom.com et al,* Civil Action No. 17-2454 (AET)(LHG).

21. Cloudflare contributes to, and thereby enables, the successful efforts of these counterfeit websites to deceive the consuming public and violate the copyrights of Plaintiffs and other members of the formalwear industry.

//////

//////

**Cloudflare**

22. Cloudflare, according to www.cloudflare.com, is a "web performance and security company." Cloudflare says it offers: (1) a content delivery network ("CDN"); (2) web content optimization; (3) website security; (4) DDoS (denial of service) protection; and (5) a managed domain name system (DNS) network.

23. Cloudflare further states on its website: "Once your website is a part of the Cloudflare community, its web traffic is routed through our intelligent global network. We automatically optimize the delivery of your web pages so your visitors get the fastest page load times and best performance. We also block threats and limit abusive bots and crawlers from wasting your bandwidth and server resources. The result: Cloudflare-powered websites see a significant improvement in performance and a decrease in spam and other attacks."

24. CloudFlare's Terms of Service provides that it retains the right to investigate its customers, their sites and "the materials comprising the sites" at any time. The Terms further provide that any violation of law will justify termination of CloudFlare's services. "CloudFlare's policy is to investigate violations of these Terms of Service and terminate repeat infringers."

25. Cloudflare's CDN is a service offered to website hosts and operators. The service is designed to speed a consumer's access to the website of Cloudflare's client through a series of data centers maintained by Cloudflare that cache mirror copies of that site. In this manner, consumers seeking to access the website of a Cloudflare client can retrieve the site from the closest Cloudflare data center rather than accessing the site from the primary host. Cloudflare boasts that it maintains dozens of data centers around the world that automatically cache static files of its clients so those files are stored closer to the visitors of the client's website, while still delivering dynamic content directly from the client's web server. CloudFlare then uses a technology called Anycast to route visitors to the nearest data center. The result is that a website, on average, loads twice as fast for visitors regardless of where they are located.

26. Cloudflare's service allows counterfeit sites and their hosts to conceal their identity from copyright owners. When presented with a notice of infringement, Cloudflare asserts that it is itself unable or unwilling to remove any infringing content, that it is merely a "pass-through security service" and not a hosting provider, and that the copyright owner must contact its customer to seek removal of the infringing content. In this fashion, Cloudflare shields pirate sites and their hosts from legal recourse by copyright owners.

27. Despite Cloudflare's attempts to distance itself from any meaningful control over the infringing content it knows, or has reason to know, resides on its customers' websites, Cloudflare's own website boasts the following:

    a. "Cloudflare caches your content across our global network, bringing it closer to visitors from every region." https://www.cloudflare.com/cdn/

    b. "A content delivery network (CDN) takes your static content and *stores a copy* closer to your visitors." https://www.cloudflare.com/website-optimization/

    c. Cloudflare's Service "is offered primarily as a platform to cache and serve web pages and websites." https://cloudflare.com/terms/

28. Moreover, Cloudflare expressly reserves the right to modify its clients' websites. Cloudflare's Terms of Service give it the right to "modify certain components" of a client's website, including the addition of scripts, cookies and other changes to enhance performance.

29. Cloudflare touts the ease with which its clients can use its services, by telling prospective customers that "Setting Up Cloudflare is Easy," and it even offers a video showing how a webmaster can place its site on the Cloudflare domain server with a few points and clicks. https://cloudflare.com/. "Set up a domain in less than 5 minutes. Keep your hosting provider. No code changes required." *Id.* "Cloudflare makes more than 10,000,000 Internet properties faster and safer. Join today!" *Id.*

30. Cloudflare further tells its clients that "[e]veryone's Internet application can benefit from using Cloudflare. Pick a plan that fits your needs."

8

**COMPLAINT FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

https://www.cloudflare.com/plans/ Cloudflare has a teaser "free" plan "[f]or personal websites." *Id.* Cloudflare touts a "Pro" plan, $20 per month per domain, for "professional websites," and a "Business" plan, $200 per month per domain, for "small eCommerce websites and businesses requiring advanced security and performance…" *Id.*

31. Plaintiffs' authorized agent for infringement notifications, XML Shop LLC d/b/a Counterfeit Technology, has sent thousands of proper DMCA takedown notices to Cloudflare, alerting Cloudflare of the existence and location of Plaintiffs' copyrighted images on pirate sites that infringe upon Plaintiffs' copyrights. A sample of those notices is attached hereto as Exhibit "B".

32. Cloudflare has ignored these notices and/or failed to take the appropriate action required by law in response to these notices.

33. Cloudflare has persisted in offering CDN and related services to pirate websites, notwithstanding these numerous notifications of infringement on such sites.

34. In this fashion, Cloudflare has induced, contributed to, profited from, and aided and abetted multiple infringements of Plaintiffs' copyrights, failing and refusing all along to implement or enforce a repeat infringer policy, and is thus liable for the infringements alleged herein.

## FIRST CLAIM FOR RELIEF – AGAINST ALL DEFENDANTS
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

35. Plaintiffs repeat and incorporate the prior allegations in this Complaint as if repeated verbatim herein.

36. Cloudflare, and Does 1-10, have, with actual and/or constructive knowledge of direct infringements of Plaintiffs' copyrighted works, materially contributed to or aided in such infringement. Such defendants are thus liable for contributory copyright infringement.

37. All named Defendants, and Does 1-10, have induced infringement of Plaintiffs' copyrights.

//////

38. As a result of these Defendants' acts of infringement, Plaintiffs are entitled to injunctive relief, damages, disgorgement of profits, statutory damages and attorneys' fees.

## PRAYER

39. Plaintiffs pray for entry of judgment including the following relief:

   a. Actual damages in a sum to be proven at time of trial, in no event less than $1,000,000;

   b. Statutory damages under the Copyright Act;

   c. Disgorgement of Defendants' profits from their infringing activities;

   d. Costs and attorneys' fees under the Copyright Act;

   e. Preliminary and permanent injunctive relief; and

   f. Such other and further relief as the Court deems appropriate.

Dated: November 7, 2018            OWENS & GACH RAY


                    By /s/ *Robert B. Owens*
                       Robert B. Owens, Esq.
                       Attorneys for Plaintiffs

COMPLAINT FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT