UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MON CHERI BRIDALS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CLOUDFLARE, INC., et al., <br><br> Defendants. | Case No. 19-cv-01356-VC <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 124, 133 |

Mon Cheri Bridals and Maggie Sottero Designs sell wedding dresses online. But their sales numbers and brand reputations are damaged by the proliferation of counterfeit retailers that sell knock-off dresses using the plaintiffs' copyrighted images. The plaintiffs have gone after the infringers in a range of actions, but to no avail—every time a website is successfully shut down, a new one takes its place. In an effort to more effectively stamp out infringement, the plaintiffs now go after a service common to many of the infringers: Cloudflare. The plaintiffs claim that Cloudflare contributes to the underlying copyright infringement by providing infringers with caching, content delivery, and security services. Because a reasonable jury could not—at least on this record—conclude that Cloudflare materially contributes to the underlying copyright infringement, the plaintiffs' motion for summary judgment is denied and Cloudflare's motion for summary judgment is granted.[1]

A party is liable for contributory copyright infringement where it "(1) has knowledge of

---

[1] The plaintiffs initially moved for summary judgment against the Doe defendants as well but abandoned this motion in their reply brief. A case management conference is scheduled for October 27, 2021 at 2:00 PM to discuss what's left of the case.

another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788, 795 (9th Cir. 2007). Simply providing services to a copyright infringer does not qualify as a "material contribution." *Id.* at 797-98. Rather, liability in the internet context follows where a party "facilitate[s] access" to infringing websites in such a way that "significantly magnif[ies]" the underlying infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *see A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001). A party can also materially contribute to copyright infringement by acting as "an essential step in the infringement process." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943-44 (9th Cir. 2011) (quoting *Visa International*, 494 F.3d at 812 (Kozinski, J., dissenting)). As the Ninth Circuit has recognized, the language used in these tests is "quite broad" and could encompass much innocuous activity if considered out of context. *Visa International*, 494 F.3d at 795. An analysis of contributory copyright infringement must therefore be cognizant of the facts in the key cases in which liability has been found. *See Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007); *Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *see also Visa International*, 494 F.3d 788 (9th Cir. 2007) (declining to find contributory infringement).

The plaintiffs seek to impose liability based on two sets of services provided by Cloudflare. First, Cloudflare provides performance-improvement services, which include its content distribution network and caching capabilities. Together, these products improve the quality of a customer's webpage, primarily by making content load faster for users. Second, Cloudflare provides security services by inserting itself between the requesting user and the host of the underlying content. As an intermediary, Cloudflare can detect suspicious traffic patterns and prevent attacks on a website's host.

1. The plaintiffs have not presented evidence from which a jury could conclude that Cloudflare's performance-improvement services materially contribute to copyright infringement. The plaintiffs' only evidence of the effects of these services is promotional material from Cloudflare's website touting the benefits of its services. These general statements do not speak to

the effects of Cloudflare on the direct infringement at issue here. For example, the plaintiffs have not offered any evidence that faster load times (assuming they were faster) would be likely to lead to significantly more infringement than would occur without Cloudflare. Without such evidence, no reasonable jury could find that Cloudflare "significantly magnif[ies]" the underlying infringement. *Amazon.com, Inc.*, 508 F.3d at 1172. Nor are Cloudflare's services an "essential step in the infringement process." *Louis Vuitton Malletier,* 658 F.3d at 944. If Cloudflare were to remove the infringing material from its cache, the copyrighted image would still be visible to the user; removing material from a cache without removing it from the hosting server would not prevent the direct infringement from occurring.

      2. Cloudflare's security services also do not materially contribute to infringement. From the perspective of a user accessing the infringing websites, these services make no difference. Cloudflare's security services do impact the ability of third parties to identify a website's hosting provider and the IP address of the server on which it resides. If Cloudflare's provision of these services made it more difficult for a third party to report incidents of infringement to the web host as part of an effort to get the underlying content taken down, perhaps it could be liable for contributory infringement. But here, the parties agree that Cloudflare informs complainants of the identity of the host in response to receiving a copyright complaint, in addition to forwarding the complaint along to the host provider.

      **IT IS SO ORDERED.**

Dated: October 6, 2021

                                                VINCE CHHABRIA
                                                United States District Judge